**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-CV-02843-MDB

RALPH MARCUS HARDY,

      Plaintiff,

v.

ADAMS COUNTY, a municipality, *et al.*,

      Defendants.

---

**DEFENDANTS ADAMS COUNTY'S, SHERIFF REIGENBORN'S, AND DEPUTY
OVERMYER'S MOTION TO DISMISS**

---

      Mr. Hardy asserts four claims for relief under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq, arising out of his incarceration at the Adams County detention facility. As to the three defendants in the case to date, Adams County,[1] Sheriff Reigenborn,[2] and Deputy Overmyer, Mr. Hardy's claims suffer from several fatal deficiencies and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**CERTIFICATION PURSUANT TO D.C.COLO.LCivR. 7.1**

      This motion is exempt from conferral pursuant to D.C.COLO.LCivR. 7.1(b)(1) and (2).

**FACTUAL ALLEGATIONS**

      Mr. Hardy is an inmate at the Adams County detention facility. ECF 22, at 4, ¶ 1; 4(l), ¶

---

[1] Adams County is a separate legal entity from the Adams County Sheriff. Undersigned counsel provides legal representation to the Sheriff and his deputies pursuant to Colorado's indemnification statutes. *See* Colo. Rev. Stat. §§ 24-10-108 & 118; 29-5-111. Here they file a consolidated motion to dismiss to comply with Local Rule of Practice–Civil VII.B.

[2] A new Adams County Sheriff will be sworn in on January 10, 2023, before this motion will be resolved. The new Sheriff will file a notice of substitution under C.R.C.P. 25(d) for Sheriff Reigenborn in his official capacity. Mr. Reigenborn will remain a party in his individual capacity.

55; *see also id.* at 4(j), ¶ 47. He alleges he suffers from an unspecified pre-existing disability in his lower back that requires his use of a wheelchair. *Id.* at 4(d), ¶¶ 20 & 22; 4(e), ¶ 25; 4(l), ¶¶ 53 & 54. Although he was previously housed in a dormitory area in F-block, he is currently housed in a cell that provides only limited wheelchair access through the door and to the shower, toilet, sink, writing table, and law kiosk. *Id.* at 4(d), ¶ 22; 4(L), at ¶¶ 55-56.

Mr. Hardy asserts he sustained physical injuries arising out of two alleged events and asserts a third instance involving retaliation. The first incident occurred on or about October 26, 2021, while Mr. Hardy was awaiting to appear remotely in his pending criminal case in Boulder County. *Id.* at 4(a), ¶ 7. On that date, he alleges was monitored by Deputy Jones (not a named party) and two unknown masked deputies. Deputy Jones is alleged to have filmed Mr. Hardy at some point during his court appearance and when Mr. Hardy exposed it during his criminal proceeding, Deputy Jones shut down the video. *Id.* at 4(a)-4(b), ¶¶ 9-11.[3] At that point, two unidentified masked deputies snatched Mr. Hardy out his chair, threw him to the ground, kneeled on him, twisted his arms behind his back, and cuffed him tightly before carrying him back to his cell by his arms. *Id.* at 4(b), ¶ 13.

The second alleged incident occurred in July 2022. At that time, he was housed in F-block, the only wheelchair accessible portion of the prison. *Id.* at 4(L), ¶¶ 55-56. This was made possible

---

[3] Mr. Hardy has separately filed a Section 1983 action relating to, among other things, the alleged monitoring of his call with the Boulder district court. *See Hardy v. Ring*, No. 22-cv-01666-LTB-GPG. Mr. Hardy's *Ring* complaint includes the allegation that various Adams County deputies failed to adequately investigate or respond to his various administrative grievances. *See, e.g.*, No. 22-cv-01666-LTB-GPG, ECF No. 20 (amended complaint filed Aug. 29, 2022) at 4(m), ¶ 32. That case has been stayed and administratively closed pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), pending resolution of Mr. Hardy's criminal trial. *Ring*, 22-cv-01666, ECF Nos. 28 (recommendation) & 29 (order adopting recommendation). As such, this motion does not further address those allegations that relate to his other case. *See Cotton v. Geraci*, 2019 WL 2106597, *8-9 (S.D. Cal. May 14, 2019) (party may not circumvent a stay by filing a new complaint).

by his earlier reclassification from maximum to medium security custody. *Id.* On July 6, 2022, however, Sheriff Reigenborn changed policy as to which classification levels were to be housed in F-block, and all medium classification prisoners were transferred out. *Id.* at ¶ 58. Mr. Hardy alleges that on the same day his lawsuit in *Ring* was filed, deputies in full riot gear showed up F-block to transfer all of the medium security inmates into another portion of detention facility. *Id.* at 4(s), ¶ 76; 4(u), ¶ 84. Mr. Hardy construes this as retaliation for the filing of the *Ring* complaint, based on an earlier comment from a deputy in June 2022, who indicated the deputies could make Mr. Hardy's life uncomfortable while incarcerated. *Id.* at 4(s), ¶ 74 & 4(t), ¶ 81.

The third incident occurred on September 22, 2022. *Id.* at 4(e), ¶ 25. Mr. Hardy alleges he fell from his wheelchair while attempting to maneuver around the privacy barrier for the toilet in his cell. *Id.* The fall left him unable to rise from the floor near the toilet. *Id.* His cellmate then pressed the emergency call button located in his cell and eventually attempted to help him back up, causing Mr. Hardy's injuries. *Id.* at ¶¶ 26, 28. The tower deputy (who is not a named party) is alleged to have unreasonably delayed in relaying the message to a floor deputy. *Id.* at ¶ 26. Mr. Hardy alleges that he remained on the floor for around an hour to an hour and a half. *Id.* at ¶ 27; 4(f), ¶ 29. The floor deputy who eventually responded was Deputy Rabie (who is a named but unserved party), who was near the end of his shift. *Id.* at 4(f), ¶ 30. Upon discovering Mr. Hardy, Deputy Rabie interacted with Mr. Hardy who informed him of his medical situation caused by the lack of a wheelchair-accessible toilet. *Id.* at ¶ 31. Mr. Rabie informed Mr. Hardy to use the prison kite or messaging system to request such a transfer and closed Mr. Hardy's cell without otherwise attending to his medical situation. *Id.* After the shift change, Deputy Chavez (who is not a named party) arrived with a nurse who rendered medical aid to Mr. Hardy. *Id.* at 4(g), ¶¶ 35-36. Deputy

Chavez is alleged to have informed Mr. Hardy that the response time to call buttons was slow because, otherwise, "they are not going to spend their entire shift chasing buttons." *Id.* at ¶ 37.

Beyond the three incidents, Mr. Hardy generally alleges Deputy Overmyer, who serves as the ADA coordinator does not understand the requirements of the ADA, mostly due to her assertion that the detention facility pre-dates the passage of the ADA and does not mandate either architectural changes or a transfer out of his cell. *Id.* at 4(h), ¶¶ 38-40; 4(i), ¶¶ 41-42; 4(m), ¶ 59; 4(n), ¶ 60; 4(o), ¶¶ 62-62; 4(p), ¶ 64; 4(q), ¶ 65. As a result, Mr. Hardy alleges Deputy Overmyer and the Sheriff have violated the ADA by declining his request to transfer cells despite his security classification. *Id.* He further protests Deputy Overmyer's offer, which he repeatedly declined, to house him in one of a wheel-chair accessible facility provided it was related to his participation in a detention facility program or service. *Id.* at 4(o), ¶ 62. Mr. Hardy declined to participate in these programs and views such participation as an improper condition of his right of access to wheel-chair accessible housing while incarcerated. *Id.* at ¶¶ 62-63. He alleges that all of Deputy Overmyer's various other attempts at accommodations that fell short of transferring his location from a cell to an open dormitory were per se inadequate. *Id.* at 4(i), ¶ 41; 4(o)-4(q), ¶ 64.

As for Sheriff Reigenborn, Mr. Hardy directly challenges the Sheriff's July 6, 2022 policy change that moved medium security inmates out of F-block as constitutionally infirm. *Id.* at 4(L)-4(m), ¶¶ 58-59; 4(o)-4(q), ¶ 64; 4(Q), ¶¶ 65-66; 4(s)-4(t), ¶ 77; 4(u), ¶ 84. Stated in the reverse, Sheriff Reigenborn has allegedly failed to adopt a security classification system that would result in Mr. Hardy being allowed in a wheel-chair accessible cell. *Id.* Apart from that, Mr. Hardy baldly alleges the Sheriff as the keeper of the jail is responsible for the deputies' conduct alleged in his complaint. *See*, *e.g.*, *id.* at 4, ¶ 3; 4(a), ¶ 5; 4(c), ¶¶ 14-17; 4(i), ¶¶ 41-44; 4(k), ¶¶ 48, 50-51.

Finally, Mr. Hardy also alleges Adams County is "a political subdivision of Colorado," that "owns and operates" the Adams County detention facility. *Id.* at 4, ¶ 2. He alleges that Adams County has been "frequently subject to suit" for issues at the detention facility. *Id.* at 4(a), ¶ 6. He further alleges that Adams County, apart from F-block, has never owned an ADA compliant detention facility due to the age of the facility. *Id.* at 4(n), ¶ 60; 4(o), ¶ 62; *accord id.* at 4(L), ¶ 56.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when its allegations, taken as true, allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court, however, should not accept conclusory allegations without supporting factual averments. *See Ruiz v. McDonell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Mere formulaic recitations of the elements of a cause of action will not suffice to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

Mr. Hardy asserts four claims for relief. Counts one and two expressly invoke 42 U.S.C. § 1983 for alleged violations of Mr. Hardy's constitutional rights against excessive force and cruel and unusual punishment. Count three invokes Title II of the ADA and the Fourteenth Amendment.[4]

---

[4] Giving Mr. Hardy's third claim a reasonable construction, he appears to be attempting to assert an ADA claim under the Fourteenth Amendment in light of *United States v. Georgia*, 546 U.S. 151 (2006), discussed below. Otherwise, Section 1983 is generally not available to assert an ADA claim, which has its own cause of action. *See Brown v. Berthoud Fire Prot. Dist.*, No. 12-cv-03028-REB-KLM, 2013 U.S. Dist. LEXIS 166244, *10-13 (D. Colo. July 15, 2013) (Title II of the ADA forecloses duplicative claims under Section 1983 and collecting cases).

Count four alleges retaliation in violation of Mr. Hardy's First Amendment rights.

## I.   TITLE II OF THE ADA DOES NOT REQUIRE ADAMS COUNTY TO MODIFY DETENTION FACILITIES THAT PREDATE 1993.

Title II of the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 *et seq*., states that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by any such entity. 42 U.S.C. § 12132. The term "public entity" includes any "instrumentality of a State[.]" 42 U.S.C. § 12131(B).

In enacting the ADA, Congress adopted two distinct systems for regulating building accessibility: one to apply to existing facilities (those designed and constructed for occupancy before January 26, 1993) and another to apply to later-constructed facilities. 42 U.S.C. §§ 12183(a)(1) and 12182(b)(2)(A)(iv). Pre-1993 facilities must remove barriers to accessibility only to the extent that such removal is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

Despite the similarity in names, the Adams County Sheriff is an independently elected constitutional officer separate from Adams County, which is a governmental entity controlled by the elected Board of County Commissioners. Colo. Const., Art. XIV, §§ 8 & 8.5; *see Bristol v. Bd. of Cty. Comm'rs*, 312 F.3d 1213, 1219 (10th Cir. 2002); *see also Tunget v. Board of County Comm'rs of Delta County*, 992 P.2d 650, 651-652 (Colo. App. 1999) ("Under both the Colorado Constitution and applicable statutes, sheriffs and boards of county commissioners are treated as separate public entities having different powers and responsibilities."). The Sheriff and the County share jurisdictional boundaries, but the County has separate statutory obligations. *See* Colo. Rev. Stat. §§ 30-11-101; 30-11-107. The Sheriff has exclusive statutory authority to hire, train, and fire

deputies. Colo. Rev. Stat. § 30-10-506; *see also Myers v. Koopman*, No. 09-cv-02802-REB-MEH, 2011 WL 650328, *31-32 (D. Colo. Feb. 11, 2011). The Sheriff has exclusive statutory powers as the keeper of the jail. Colo. Rev. Stat. §§ 17-26-101 to 103; *id.* at 30-10-511 ("[T]he sheriff shall have charge and custody of the jails of the county, and of the prisoners in the jails, and shall supervise them himself or herself through a deputy or jailer."); *see also Sisneros v. Cty. of Pueblo*, No. 09-cv-01646-PAB-MJW, 2010 WL 1782017, at *3 (D. Colo. May 3, 2010). The Board is not responsible for, nor can it control, the Sheriff's policies and practices within the detention facility. *See Frazier v. Jordan*, No. 06-1333, 2007 U.S. App. LEXIS 696, 2007 WL 60883, at *6 (10th Cir. Jan. 10, 2007); *Richart v. Bd. of Comm'rs of Boulder Cty.*, 33 P.2d 971, 972-73 (Colo. 1934); *Mullen v. Adams Cty. Bd. of Comm'rs*, No. 21-cv-02398-RM-NYW, 2022 WL 1266618, *15-24 (D. Colo. April 28, 2022), adopted in relevant part, 2022 WL 17261428 (D. Colo. Nov. 22, 2022); *Archuleta v. Adams Cty. Bd. of Cty. Comm'rs*, No. 07-cv-02515-MSK-CBS, 2011 U.S. Dist. LEXIS 95835, 2011 WL 3799029, at *10 (D. Colo. June 14, 2011), adopted, 2011 WL 3809911 (D. Colo. Aug. 26, 2011); *see also Terry v. Sullivan*, 58 P.3d 1098, 1102 (Colo. App. 2002).

As such, the County (or the Board) is not the real-party-in-interest as to the Sheriff's policies within the detention facility or his hiring, training, or supervision of deputies. *See Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (proper affiliation of state employees or entities is determined by looking to "the real party in interest"). Because the Sheriff is not an agent of the County for purposes of the operation of the detention facility, a *Monell* claim does not lie against the County for the Sheriff's conduct—whether directly or through an "official capacity" claim against the Sheriff. The Sheriff is the real party in interest when it comes to the operation of the detention facility. The Sheriff (and his successors) would be bound by any holding and their statutory powers thereby limited. The fact the County may have an indirect or secondary indemnification duty under

a state statute does not alter the analysis. *Lewis*, 581 U.S. at 165 ("The critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab.").[5]

By Colorado statute, Adams County sole statutory obligation is to build and provide a jail to the Sheriff. Colo. Rev. Stat. § 30-11-104(1)(a). Adams County fulfilled that obligation in 1986 by building the current detention facility. Although he does not plead a specific date,[6] Mr. Hardy acknowledges the bulk of the detention facility predates the ADA with the exception of F-block, which Mr. Hardy alleges to be ADA compliant. ECF No. 22, at 4(L), ¶ 56; 4(n), ¶ 60; 4(o), ¶ 62. Architectural or structural changes to the original detention facility, however, are not readily achievable under the ADA's applicable standard where there are not easily achievable or involve significant expense. *See* 42 U.S.C. § 12181(9). Mr. Hardy does not allege otherwise. Nor does he allege that changes to the existing cellblocks are "easily accomplishable" or are "able to be carried out without much difficulty or expense." *Id.* Instead, he argues the County has an absolute obligation to provide wheelchair accessible housing in the detention facility. This is incorrect as a matter of law. *See* 42 U.S.C. § 12182(b)(2)(A)(iv); *see also Lue v. Moore*, 43 F.3d 1203, 1206 (8th

---

[5] One case, *Chavez v. Bd. of Cty. Comm'rs*, 426 F. Supp. 3d 802, 812 (D. Colo. 2019), has held based on Colo. Rev. Stat. § 30-25-104 that a county's ability to raise taxes to satisfy judgments against a sheriff makes any distinction between the county and the sheriff "purely theoretical." *See also Coates v. Adams Cty. Sheriff's Office*, No. 20-cv-01936-STV, 2022 WL 4493972, *42-44 (D. Colo. Sept. 27, 2022) (applying *Chavez* in deputy termination case) (currently on appeal to Tenth Circuit as appeal no.22-1339). On this point, however, *Chavez*'s brief assessment is directly inconsistent with *Lewis*. It, moreover, misinterprets the underlying statute. That statute does no more than protect a county from having its property liened. Instead, the statute authorizes the County to raise taxes to satisfy either direct judgments or its share of secondary indemnification obligations. It does not effect a constructive merger of two separate constitutional offices.

[6] Mr. Hardy references the detention facility's litigation history. ECF No. 22, at 4(a), ¶ 6. Among the earliest of those cases is one involving an inmate of the detention facility in 1987. *See, e.g.*, *Howell v. Koch*, No. 94-S-2718, 1995 U.S. Dist. LEXIS 16150, *2-3 (D. Colo. May 12, 1995) (plaintiff's allegations regarding the Adams County Detention Facility date back to March 27, 1987). To the extent necessary, the Court can take judicial notice of a party's litigation history. *See, e.g.*, *Syrus v. NBA*, No. 19-6096, 2019 WL 7938555, *1, n. 2 (10th Cir. Oct. 25, 2019).

Cir. 1994) (Rehabilitation Act "does not require the defendants to give handicapped inmates preferential treatment").

Mr. Hardy does not allege any other conduct by the Board that is within its statutory area of responsibilities. The security classification system within the detention facility is the exclusive province of the Sheriff, as is his determination as to where certain security levels of inmates should be allocated among the facilities constructed by the County. The Board has no authority on that issue that it can delegate or supervise, nor does it have any other ability to control the Sheriff's decisions in that respect. As such, Mr. Hardy's claims against Adams County regarding the Sheriff's classification decisions should be dismissed with prejudice.

## II.    SHERIFF REIGENBORN HAS IMMUNITY FROM MR. HARDY'S CLAIMS, WHICH ALSO FAIL TO STATE A CLAIM UNDER RULE 12(B)(6).

Mr. Hardy expressly challenges Sheriff's Reigenborn's July 6, 2022 classification decision that removed all medium security inmates from F-block, regardless of their disability status. He objects to the detention facility's policy of allowing medium security inmates to use the limited wheelchair-accessible housing only when participating in additional programming at the detention facility. Otherwise, Mr. Hardy alleges Sheriff Reigenborn is liable as the supervisor or employer of the deputies involved in the incidents on October 26, 2021 and September 22, 2022.

### A.    Sheriff Reigenborn Is Only Properly Named in His Personal Capacity.

Mr. Hardy purports to name Sheriff Reigenborn in both his personal and official capacity. Subject to the Sheriff's other arguments, however, he is only properly named in his personal capacity. Official capacity claims are pass through claims. *See Hafer v. Melo*, 502 U.S. 21, 25-26 (1991). A party may, in certain circumstances, name an agent in his or her official capacity in order to get at an otherwise unnamed or unknown principal. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978). Moreover, such claims presuppose a principal-agent relationship or an act

of delegation, which varies on a function-by-function basis. *Id.*; *see also McMillian v. Monroe County*, 520 U.S. 781, 785 & 793 (1997) (county sheriff is not a county's agent for every purpose); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n.12 (1986) (plurality) (same).

Here, however, Sheriff Reigenborn is the principal, not the County. As set forth above, he alone is legally responsible for hiring, firing, training, and supervising deputies, including those who work at the detention facility. He alone is statutorily empowered to be the keeper of the jail. His alleged actions or inactions are his own. In short, he is not the County's agent for running the detention facility. If he's anyone's agent for this function, he is the State's, which raises Eleventh Amendment issues (*see* III.D below). But because the Sheriff is directly named as a party in his personal capacity, there is no need to simultaneously name him in his official capacity. As such, he should be dismissed in his official capacity.

### B. Sheriff Reigenborn in His Personal Capacity Has Qualified Immunity from Mr. Hardy's Second and Fourth Claims for Relief.

Qualified immunity shields government officials from Section 1983 damages suits and ADA claims so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Hall v. Thomas*, 190 F.3d 693, 696-97 (5th Cir 1999) (qualified immunity is available as defense to ADA claims) and *Gorman v. Bartch*, 152 F.3d 907, 914-16 (8th Cir 1998) (same). When governmental officials assert qualified immunity, they create a rebuttable presumption of immunity from a Section 1983 claim. *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001). The plaintiff then bears the "heavy" burden of establishing that qualified immunity does not apply. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).

The qualified immunity analysis has two elements: (1) Whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right; and (2) whether the right at

issue was "clearly established" at the time of the defendants' alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2008). "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Archuleta*, 523 F.3d at 1283. Clearly established law should not be defined "at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Rather, the dispositive question is "whether the violative nature of particular conduct is clearly established." *Id.* If the plaintiff fails to satisfy any part of the qualified-immunity inquiry, "the court must grant the defendant qualified immunity." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

In determining whether a right is clearly established, a plaintiff must point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented. *See Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012). Thus, it is Mr. Hardy's burden to identify a case where an official acting under sufficiently similar circumstances was held to have violated a claimant's Fourteenth Amendment rights. *See White v. Pauley*, 137 S. Ct. 548, 552 (2017). "The dispositive question is whether the violative nature of the particular conduct is clearly established." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015). To satisfy this element, "existing precedent must have placed the statutory or constitutional question beyond debate." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017).

Here, Mr. Hardy will be unable to point to any Supreme Court or Tenth Circuit precedent construing the Constitutional or statutory provisions at issue as requiring a County Sheriff to modify otherwise appropriate security classifications to accommodate an inmate's request for

more readily wheelchair-accessible housing. Nor is there a legal obligation to exempt an inmate from a group-wide housing reassignment based on security levels merely because the inmate happens to be a plaintiff in federal lawsuit. Sheriff Reigenborn had no basis, let alone a clearly established basis, to believe he was under a duty under either Fourteenth Amendment or the ADA to accommodate Mr. Hardy's requests. As such, Sheriff Reigenborn is entitled to qualified immunity and should be dismissed with prejudice from this case.

 **C.**   **Mr. Hardy's First and Third Claims Fail to State a Claim Against Sheriff Reigenborn.**

 Mr. Hardy's first claim under Section 1983 for excessive force alleges no individual involvement from Sheriff Reigenborn. It alleges no prior knowledge by Sheriff Reigenborn that the deputies would throw Mr. Hardy to the ground and handcuff them as they allegedly did. All Mr. Hardy alleges is a conclusory failure to train or supervise on the part of Sheriff Reigenborn. ECF No. 22 at 4, ¶ 4; 4(a), ¶ 5. These allegations are insufficient on their face to sustain a claim against Sheriff Reigenborn for the actions of the deputies that are alleged to have occurred on October 26, 2021. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). Absent some plausible concrete allegation that Sheriff Reigenborn somehow personally participated in the events that led to the October 26, 2021 incident (apart from video call monitoring policy that is at issue in the separate *Ring* matter), Mr. Hardy fails to state a claim against Sheriff Reigenborn for excessive force. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *see also Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.").

 As for Mr. Hardy's third claim under Title II of the ADA, it fails to state a claim for two reasons. First, the Title II of the ADA only applies to "public entities." 42 U.S.C.S. § 12132; *id.* at

§ 12131(1). The Sheriff is not an entity. He is an individual sued in his personal capacity. Such claims are not actionable under Title II of the ADA (and any official capacity claim is barred by the Eleventh Amendment, *see infra*). *See Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *Williams v. Banning*, 72 F.3d 552 (7th Cir. 1995); *Davoll v. Webb*, 943 F. Supp. 1289, 1295 (D. Colo 1996); *see also Fay v. Denver Police Dep't*, No. 97-WY-1650-AJ, 1998 U.S. Dist. LEXIS 23959, *4 (D. Colo. Mar. 19, 1998) ("As to the ADA claims, Title II of the ADA applies to government bodies and not to individual employees.").

As for any imputation of liability to the Sheriff in his personal capacity based on the actions of his deputies, Title II of the ADA does not authorize claims based on respondeat superior in non-employment cases. *Jones v. City of Detroit, Michigan*, 20 F.4th 1117, 1121 (6th Cir. 2021); *Ingram v. Kubik*, 30 F.4th 1241, 1258 (11th Cir. 2022); *see also Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998) (no vicarious liability under Title IX); *accord Gray v. Cummings*, 917 F.3d 1, 17 (1st Cir. 2019) (noting the open issue as to claims under Title II of the ADA in light of *Gebser* but declining to resolve it); *but see A.V. v. Douglas Cty. Sch. Dist. RE-1*, 586 F. Supp. 3d 1053, 1066-67 (D. Colo. 2022) (allowing for vicarious liability under Title II in the absence of any binding authority). Thus, any allegations regarding the acts of the Sheriff's deputies cannot be attributed to him. As such, Mr. Hardy's third claim for relief under Title II of the ADA should be dismissed with prejudice.

### D. Sheriff Reigenborn Has Eleventh Amendment Immunity from Suit in His Official Capacity for all Four of Mr. Hardy's Claims.

Eleventh Amendment immunity applies not only to a state but also to a person that is an arm of the state. *Couser v. Gay*, 959 F.3d 1018, 1023 (10th Cir. 2020). While the Supreme Court "has repeatedly refused to extend [Eleventh Amendment] sovereign immunity to counties[,]" *Northern Ins. Co. of New York v. Chatham Cty.*, 547 U.S. 189, 193 (2006), county-level officers,

including county sheriffs, can receive Eleventh Amendment immunity when they exercise State, rather than county powers. *See McMillian*, 520 U.S. at 785 & 793 (holding that an Alabama county sheriff was a State, not county, "policy maker" and entitled to Eleventh Amendment immunity when investigating a murder under the state's criminal code). That inquiry is not a "categorical, 'all or nothing'" one, but must be determined in "a particular area, or on a particular issue." *Id.*; *see also Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1220 n.26 (10th Cir. 2022) (same).

As set forth in detail above, county sheriffs in Colorado are independently-elected state constitutional officers with jurisdictional limits tied to a geographic boundary. As such, they serve in a variety of roles. *See Struble v. Barger*, 261 P.2d 497, 498 (Colo. 1953) (referring to the office of the county sheriff serving as both an "executive officer" and an "officer of the court"). Under the Colorado Constitution, law enforcement is executive in nature. *See* Colo. Const., art. IV, § 2 (granting to Governor "supreme executive power of the state" and imposing duty to "take care that the laws be faithfully executed"); *see also Manders v. Lee*, 338 F.3d 1304, 1313 (11th Cir. 2003) (en banc). The State has the power of incarceration as part of its police powers. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). The State delegates that power to county sheriffs in each jurisdiction by statute. The County, for its party, exercises no control over the Sheriff in the operation of detention facility. By statute, the Sheriff's finances are derived from a variety of federal and state grants, county tax revenue, and fees for services provided. *See*, *e.g.*, Colo. Rev. Stat. §§ 30-10-102(1); 30-10-521. Thus, county sheriffs have Eleventh Amendment immunity in their official capacity for Section 1983 claims arising out of the operation of a detention facility. *See Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1288 (11th Cir. 1998) ("[A]n Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail."); *accord Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007); *White v. Adams Cty. Detention*

14

*Facility*, 1995 U.S. App. LEXIS 16574, *2-3 (10th Cir. 1995) (acknowledging but reversing grant of immunity for operation of detention facility based on pre-*Twombly* pleading standard).

In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court held Title II of the ADA waived sovereign immunity, but only in part. Courts must "determine in the first instance, on a claim-by-claim basis, . . . which aspects of the State's alleged conduct violated Title II." *Id.* at 159. If a court concludes that some aspects of a state actor's conduct violated Title II, it should then move on to determine whether that conduct violated the Fourteenth Amendment. *Id.* Finally, a court must also determine "insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.* at 159. *See also Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1168 (10th Cir. 2021).

Here, Mr. Hardy does not allege the deprivation of any right protected by the Fourteenth Amendment. He does not allege, for example, the denial of access to a program provided by the detention facility. To the contrary, he refuses to participate in any and views such participation as an impermissible condition on his absolute right of access to a particular housing arrangement. But the Fourteenth Amendment does not guarantee an absolute right to housing arrangement with a greater degree of wheelchair accessibility. Nor does it require the Sheriff to modify otherwise neutral security classifications to exempt a particular inmate with a disability from a more restrictive housing arrangement. In short, the Eleventh Amendment has not been waived for fundamental conditions of incarceration. As such, as to the Sheriff in his official capacity, Mr. Hardy's ADA claim is barred.

### III.   MR. HARDY FAILS TO STATE A CLAIM AGAINST DEPUTY OVERMYER WHO IS ALSO ENTITLED TO QUALIFIED IMMUNITY

Mr. Hardy asserts two claims against Deputy Overmyer in her personal and official

capacity: counts two and four. Count two is pressed under Section 1983 for a violation of Mr. Hardy's rights against cruel and unusual punishment. Count four is pressed under the ADA.

As noted above, in certain cases, a party may assert a claim against a governmental actor in her "official capacity" as a pass-through claim to reach the principal behind the actor. Here Sheriff Reigenborn, the real-party in interest, has already been named. As such, no official capacity claim is necessary. Nor can a plaintiff use an official capacity claim to circumvent either Deputy Overmyer's or Sheriff Reigenborn's respective immunities and defenses through renaming.

As for count two, it arises out of the September 22, 2022 incident. As set forth above, Deputy Overmyer is nowhere alleged to have interacted with Mr. Hardy on September 22, 2022, let alone before he was provided medical treatment. Mr. Hardy alleges only that his security classification placed him in the cell that day and that Deputy Overmyer, at some point subsequent to the incident, did not grant his transfer request in response to the incident. As such, taking the allegations of the complaint as true, Deputy Overmyer could not have been the cause of any of his alleged related injuries arising out of any failure to timely receive medical attention. Deputy Rabie alone is alleged to have been aware of Mr. Hardy's condition and "simply failed to tell anyone at all" of his condition prior to ending his shift. As for the alleged "policy" of not quickly responding to medical distress buttons, Mr. Hardy conclusory alleges that Sheriff is the responsible party for creating or allowing that policy. In short, Deputy Overmyer played no role in either alleged factual basis for Mr. Hardy's second claim. That claim, therefore, should be dismissed against her in her personal capacity. As for count four, it seeks to hold Deputy Overmyer personally liable for an alleged violation of Title II of the ADA. But Title II of the ADA, as set forth above, applies only to government bodies and not to individual employees. *See*, *e.g.*, *Mason*, 82 F.3d at 1009. As such, count four should be dismissed against Deputy Overmyer in her personal capacity.

To the extent counts two and four are not dismissed on other grounds, Deputy Overmyer has qualified immunity for both counts for the same reasons set forth in Section II.B, *supra*.

## CONCLUSION

For the foregoing reasons, Mr. Hardy's claims against Adams County, Sheriff Reigenborn in his personal and official capacities, and Deputy Overmyer should be dismissed with prejudice.

DATED: January 9, 2023

Respectfully submitted,

<u>s/Michael A. Sink</u>
Michael A. Sink
Assistant County Attorney
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone: (720) 523-6116
Fax: (720) 523-6114
msink@adcogov.org

*Counsel for Defendants Adams County,*
*Sheriff Richard A Reigenborn, and*
*Deputy Jennifer Overmyer*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2023, I caused the forgoing to be electronically filed with the Clerk of the Court using the CM/ECF system; I further certify that I sent a copy of the foregoing to *pro se* Plaintiff Ralph Hardy via U.S. mail, postage prepaid, to:

Ralph Marcus Hardy
#22-7798
Adams County Detention Facility
P.O. Box 5011
150 North 19th Avenue
Brighton, CO 80601

<u>s/Michael A. Sink</u>
Michael A. Sink
Assistant County Attorney
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone: (720) 523-6116
Fax: (720) 523-6114
msink@adcogov.org

*Counsel for Defendants Adams County,*
*Sheriff Richard A Reigenborn, and*
*Deputy Jennifer Overmyer*