IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-CV-02843-WJM-MDB

**RALPH MARCUS HARDY,**

      Plaintiff,

v.

**ADAMS COUNTY, a municipality,
GENE CLAPS, Sheriff, Adams County, in his official capacity,
DEPUTY RABIE, deputy,
DEPUTY OVERMYER, deputy,
DEPUTY DEHERRERA, detention specialist, and
RICHARD REIGENBORN, in his individual capacity,**

      Defendants.

___

**DEFENDANT DANIEL DEHERRERA'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(B)(6)**
___

Mr. Hardy's operative complaint (ECF 55) against Mr. DeHerrera asserts one claim against Mr. DeHerrera in his personal capacity pursuant to 42 U.S.C. §1983. In his second claim for relief, Mr. Hardy alleges that Mr. DeHerrera was deliberately indifferent to his serious medical needs because Mr. DeHerrera did not inform a Sheriff's deputy of Mr. Hardy's injuries or his need for medical care. Mr. Hardy's complaint against Mr. DeHerrera, however, is based on pure conjecture. In other words, Mr. Hardy pled facts that he has no basis of either knowing firsthand or knowing based on information and belief. Even so, Mr. Hardy's claim against Mr. DeHerrera is predicated on an injury caused by a fall and a third party, Mr. Hardy's cellmate, who was not subject to control by Mr. DeHerrera at the time of the incident. Mr. DeHerrera, moreover, is entitled to qualified immunity based on the facts as properly alleged. Mr. DeHerrera, therefore, respectfully requests

1

the Court dismiss Mr. Hardy's claim against him with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## CERTIFICATION PURSUANT TO D.C.COLO.LCivR. 7.1

This motion is exempt from conferral pursuant to D.C.COLO.LCivR. 7.1(b)(1) and (2). Plaintiff is a *pro se* incarcerated person, therefore conferral is not required.

## FACTUAL ALLEGATIONS

Mr. Hardy is a former inmate at the Adams County Detention Facility who was booked into custody on October 6, 2021. He alleges he suffers from an unspecified pre-existing disability that confines him to a wheelchair. ECF 55 at 4(d), ¶¶ 20 & 22; & 4(e), ¶ 25; 4(l). Mr. Hardy alleges that during a portion of his stay at the jail, he was housed in a cell that provided only limited wheelchair access through the door and to the shower, toilet, sink, writing table, and law kiosk. *Id.* at 4(d), ¶ 22.

According to Mr. Hardy, on September 22, 2022, detention specialist DeHerrera was stationed in the control tower. At some unspecified point while detention specialty DeHerrera was on shift, Mr. Hardy alleges he fell from his wheelchair while he was in his cell with the door closed and while attempting to maneuver around the privacy barrier for the toilet. *Id.* at 4(e), ¶ 25. This fall left him unable to rise from the floor near the toilet. His cellmate then repeatedly pressed the distress button located in his cell and eventually helped him back up into his wheelchair which, according to Mr. Hardy, caused him additional injuries. *Id.* at 4(e), ¶¶ 26-28. Mr. Hardy alleges that he waited for a response to the activated duress button for around an hour to an hour and a half. *Id.* at 4(f), ¶ 29.

Mr. Hardy then alleges that Deputy Rabie was the first to enter the housing unit after the distress button had been activated, but that he had not been informed that the distress button had

been pressed because he was "only escorting the inmate porters serving dinner." *Id.* at 4(f), ¶ 30. When Deputy Rabie opened the door to Mr. Hardy's cell to pass him his dinner meal, Mr. Hardy alleges that Deputy Rabie saw Mr. Hardy in a "contorted position and in extreme pain." *Id.* at 4(f), ¶ 31. Mr. Hardy then indicated that Deputy Rabie asked Mr. Hardy what happened to him and that is when Mr. Hardy "verbally declared a medical emergency and informed Deputy Rabie that he had fallen while trying to make the wheelchair/toilet transfer." *Id.* Mr. Hardy alleges that in response, Deputy Rabie told Mr. Hardy to file a grievance and then closed the cell door in Mr. Hardy's face. *Id.* Mr. Hardy eventually received medical care when Deputy Chavez eventually visited Mr. Hardy's cell after the shift change along with a nurse. *Id.* at 4(g), ¶¶ 35-36.

Mr. Hardy's allegations that specifically reference Mr. DeHerrera are as follows:

- "The emergency distress button was to alert Detention Specialist DeHerrera of a medical emergency. Defendant DeHerrera's reasonability was to notify floor deputies of distress calls from inmate cells. Defendant DeHerrera acted deliberately indifferent and intentionally failed to notify the floor deputies of a call for emergency medical attention despite the known or obvious risk of harm Mr. Hardy was subjected to." *Id.* at 4(e), ¶ 26.

- "It was deputy Rabie who first entered the Pod, but was only escorting the inmate porters serving dinner. Defendant DeHerrera had never alerted the floor deputies of the distress button being activated from Mr. Hardy's cell." *Id.* at 4(f), ¶ 30.

- "Deputy Chavez also informed Mr. Hardy that the reason defendant Det. Specialist DeHerrera did not respond to the emergency call button from his cell is because the living unit deputies have their own personal policy not to respond to the buttons because 'some inmates abuse the buttons, and they are not going to spend their entire shift chasing buttons.'" *Id.* at 4(g), ¶ 37 (cleaned up); *see also id.* at 4(i)-4(j), ¶45.

- "The acts or omissions of defendant DeHerrera were also deliberately indifferent to emergency distress protocols and to Mr. Hardy's serious medical needs, because he also entered into the agreement, custom, or practice of intentionally ignoring the emergency distress buttons that resulted in those things complained of in paragraph 45. Deputy DeHerrera's acts or omissions are also the result of Sheriff Reigenborn's deliberate indifference to adequate training, supervising and disciplining his subordinate employees that caused the constitutional harm in this case." *Id.* at 4(j), ¶ 46.

3

Despite these allegations, Mr. Hardy has failed to demonstrate that he suffered a constitutional violation as he has not pled adequate facts to show that Detention Specialist DeHerrera was deliberately indifferent to any serious medical need under the applicable constitutional standards.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when its allegations, taken as true, allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility also refers "to the scope of the allegations in a complaint; if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

The Court, however, need not accept conclusory allegations without supporting factual averments. *See Ruiz v. McDonell*, 299 F.3d 1173, 1181 (10th Cir. 2002). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quotations omitted). Thus, mere formulaic recitations of the elements of a cause of action will not suffice to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Nor are courts "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (*quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[A] complaint does not suffice if it tenders 'naked assertion[s]' devoid of 'further factual

4

enhancement.'" *Iqbal*, 129 S. Ct. at 1949.

A pro se litigant's pleadings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A pro se plaintiff's "unfamiliarity with pleading requirements" is not a basis for dismissal, but it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* Dismissal of a pro se complaint is proper "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend*.*" *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999). Rule 8 requires pleadings to be based on actual knowledge or other facts that support an allegation based on information and belief. Mere supposition about a defendant's knowledge or conduct is insufficient. *See Self v. Crum*, 439 F.3d 1227, 1235 (10th Cir. 2006) (allegations resting solely on speculation and conjecture cannot support an inference of actual knowledge).

## ARGUMENT

To prevail on a claim under 42 U.S.C. § 1983, Mr. Hardy must allege that (1) some "person" within the meaning of the statute (2) acting under "color of law" (3) has proximately caused (4) the deprivation of one of his federal rights. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). As such, the factors necessary to establish a Section 1983 claim will vary with the constitutional provision at issue. *See Iqbal*, 556 U.S. at 676 (so holding in the analogous *Bivens* context). Moreover, where qualified immunity is raised, the plaintiff must further establish that the constitutional rights at issue were clearly established at the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Although qualified immunity may be considered before assessing a

plaintiff's claim, qualified immunity (if applicable) bars a suit even where a plaintiff otherwise sufficiently pleads a Section 1983 claim. *See Butler v. Bd. of Cty. Comm'rs for San Miguel Cty.*, 920 F.3d 651, 655 (10th Cir. 2019).

Here, Mr. Hardy fails to state a claim against Detention Specialist DeHerrera because he does not plausibly allege personal participation by Mr. DeHerrera. Moreover, Detention Specialist DeHerrera is entitled to qualified immunity on Mr. Hardy's second claim for relief.

## I. MR. HARDY FAILS TO STATE A CLAIM AGAINST DETENTION SPECIALIST DEHERRERA

A Section 1983 claim requires personal participation by each defendant. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Conclusory allegations of involvement are not sufficient. *See Iqbal*, 556 U.S. 662, 676 (2009). Here, Mr. Hardy does not plausibly allege any conduct by Detention Specialist DeHerrera that violated his constitutional rights.

Mr. Hardy never interacted directly with Detention Specialist DeHerrera. Rather, he fell in his cell while the door was closed. His cell mate pressed the distress button approximately three times over 90 minutes. In that period of time, Mr. Hardy does not allege he observed Detention Specialist DeHerrera at all, or that he directly communicated with him. He supposes that the delayed response by Deputy Rabie was due to Deputy Rabie not being told of the distress bell. But Deputy Rabie is not alleged to have stated that. Even if he had, it does not follow that Detention Specialist DeHerrera had not informed some other deputy of the distress call.

As for Deputy Chavez's comment after the shift change when the medical cart arrived, Mr. Hardy again draws an inference that does not follow from the statement imputed to Deputy Chavez. All Deputy Chavez is alleged to have said is that "some inmates abuse the buttons, and they are not going to spend their entire shift chasing buttons." It does not follow, however, that Detention Specialist DeHerrera did not inform a deputy of the distress signal. As Mr. Hardy elsewhere

6

alleges, it is the deputies, not the detention specialist in the tower, who are responsible for visiting the cells. Even entertaining Mr. Hardy's recharacterization of Deputy Chavez's statement as meaning (despite the actual words) that certain "living unit deputies have their own personal policy not to respond to the buttons[,]" that still does not include Detention Specialty DeHerrera, who is not alleged to have that kind of information authority. *Accord* ECF 55, at 4(i)-4(j), ¶¶ 45-46.

In sum, Mr. Hardy does not know what happened in the tower when his cellmate pushed the distress button. His supposition is not entitled to weight merely because he asserts it in his complaint. *See*, *e.g.*, *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation."). As such, he has failed to allege any concrete facts that tend show Detention Specialist DeHerrera personally participated in any acts or omissions that contributed to any alleged constitutional violation. Mr. Hardy's claim against Mr. DeHerrera, therefore, should be dismissed for failure to state a claim.

## II.   DETENTION SPECIALIST DEHERRERA IS ENTITLED TO QUALIFIED IMMUNITY AND MUST BE DISMISSED.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity is immunity from suit and is not simply a defense. *Mitchell v. Fortyth*, 472 U.S. 511, 526 (1985). When governmental officials assert qualified immunity, they create a rebuttable presumption of immunity from a Section 1983 claim. *See Medina v. Cram*, 252 F.3d

1124, 1129 (10th Cir. 2001). The plaintiff then bears the "heavy" burden of establishing that qualified immunity does not apply. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).

The qualified immunity analysis has two elements: (1) Whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendants' alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2008). "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Archuleta*, 523 F.3d at 1283. Clearly established law should not be defined "at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Rather, the dispositive question is "whether the violative nature of particular conduct is clearly established." *Id.* If the plaintiff fails to satisfy any part of the qualified-immunity inquiry, "the court must grant the defendant qualified immunity." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

### A. Mr. Hardy has not established that there was a violation of his constitutional rights.

The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right. *See*, *e.g.*, *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282-83 (10th Cir. 2007). The Supreme Court and the Tenth Circuit have held that the Eighth Amendment's protections apply to pretrial detainees through the due process clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535-37, (1979); *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court outlined a two-part test, including both an objective and subjective component, in order to determine whether a "prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Therefore, in order to prevail on his claim that Defendant DeHerrera violated

the Eighth Amendment, Mr. Hardy must show that (1) objectively, the harm complained of is sufficiently "serious" to merit constitutional protection and (2) defendants were subjectively aware of a substantial risk to plaintiff's health or safety and acted in purposeful disregard of that risk. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

        *1.*        *Objective Component*

The objective component requires that the deprivation be "sufficiently serious" to be of a constitutional dimension. *Farmer,* 511 U.S. at 834. To satisfy this component a plaintiff must establish that "he [was] incarcerated under conditions posing a substantial risk of serious harm," *Id.* This requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Specifically, "[a] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

As an initial matter, the Second Amended Complaint does not state what injuries Mr. Hardy actually sustained as a result of the fall. He further fails to allege any subsequent diagnosis demonstrating that Mr. Hardy's condition was sufficiently serious to require immediate medical attention. There is no allegation of Mr. Hardy making loud noises, bleeding, violently jerking, frothing at the mouth, or being unconscious or nonresponsive. He was, rather, able to communicate clearly with Deputy Rabie when he arrived and opened the cell door. In his allegation against Deputy Rabie, Mr. Hardy asserts that "[a]ny brief assessment of Mr. Hardy would cause anyone to see that Mr. Hardy was injured in some way, and needed immediate medical attention." ECF 55, at 4(f), ¶ 31. But being injured in "some way" is not enough. Demanding immediate medical

9

treatment is not enough. *See Perkins*, 165 F.3d at 811 ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation"). There must be objective component that suggests a serious medical condition demanding immediate medical attention. Mr. Hardy has not pled such an objective component.

Even if he had, Mr. Hardy fails to plead an objective component that would have made it obvious to a detention specialist located in the tower that a doctor's attention was necessary. Again, Mr. Hardy never interacted directly with Detention Specialist DeHerrera. Rather, he fell in his cell while the door was closed. Whatever symptoms he exhibited while lying on the floor behind a locked cell door would not have been detectable by a detention specialist in the tower located across the Pod. Whatever information Deputy Rabie may have been able to gather from a "brief assessment" of Mr. Hardy lying on the floor was not available to Detention Specialist DeHerrera who was not on the floor. ECF 55, at 4(f), ¶ 31. Two or three distress button calls over 90 minutes standing on their own do not indicate the necessity for a doctor's immediate attention to a serious medical condition. Mr. Hardy, therefore, has failed to plead facts sufficient to show that his medical need was objectively serious.

2.   *Subjective Component*

The subjective component requires the prison official to have a culpable state of mind. *Farmer*, 511 U.S. at 834. The Supreme Court has held that a prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both [1] be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [2] he must also draw the inference." *Farmer*, 511 U.S. at 837 (numbering added). The subjective component of an Eighth Amendment claim "presents a high evidentiary hurdle to . . . [§ 1983] plaintiffs." *Vasquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018) (quotation

10

omitted). Likewise when a prison official knows that "his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference…" then the subjective component has been met. *Sealock v. Colorado,* 218 F3d 1205, 1211 (10th Cir. 2000). Here, Mr. Hardy has not shown that Defendant DeHerrera knew of an excessive risk to Mr. Hardy's health or safety, let alone drew the inference Mr. Hardy was at risk and disregarded it.

As stated above, there are alleged facts to show that, given his location, Detention Specialist DeHerrera was aware of the details of Mr. Hardy's alleged injuries while he was lying on the floor behind a shut cell door, let alone that he consciously disregarded them by not notifying a floor deputy of the distress alarm. The facts as pled do not demonstrate that Detention Specialist DeHerrera knew of an *excessive* risk to Mr. Hardy's health or safety. At most they allege that Mr. Hardy's cellmate periodically attempted to get Mr. DeHerrera's attention.

As such, Detention Specialist DeHerrera is entitled to qualified immunity because Mr. Hardy has not pled facts sufficient to show Detention Specialist DeHerrera disregarded a known excessive risk to Mr. Hardy's health or safety.

**B.   The law was not clearly established that Detention Specialist DeHerrera had an obligation to make sure a deputy checked on Mr. Hardy in his cell within a certain amount of time.**

In determining whether a right is clearly established, a plaintiff must point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented. *See Schwartz v. Booker*, 702 F.3d 573, 587-88 (10th Cir. 2012). Thus, it is Mr. Hardy's burden to identify a case where an official acting under sufficiently similar circumstances was held to have violated a claimant's rights. *See White v. Pauley*, 137 S.Ct. 548, 552 (2017). "The dispositive question is whether the violative nature of the *particular conduct* is clearly established." *Aldaba v. Pickens*, 844 F.3d 870,

11

877 (10th Cir. 2016) (emphasis in original). To satisfy this element, "existing precedent must have placed the statutory or constitutional question beyond debate." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

In effect, Mr. Hardy seeks a determination that Detention Specialist DeHerrera had an obligation to make sure a deputy checked on him in his cell within a certain amount of time. Mr. Hardy, however, will be unable to provide a single Tenth Circuit or Supreme Court case where an individual employed by a law enforcement agency and working in a county jail was held liable for deliberate indifference to a serious medical need under circumstances sufficiently similar to those present here. Likewise, Mr. Hardy will be unable demonstrate that the weight of other authority clearly establishes such violations. For this reason as well, Detention Specialist DeHerrera is entitled to qualified immunity and must be dismissed from this action.

## CONCLUSION

For the foregoing reasons, Mr. Hardy's claims against Mr. DeHerrera should be dismissed with prejudice.

DATED: April 13, 2023.

Respectfully submitted,

*s/Michael A. Sink*
Michael A. Sink
Assistant County Attorney
Kerri A. Booth
Assistant County Attorney
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone: (720) 523-6116
Fax: (720) 523-6114
msink@adcogov.org

*Counsel for Defendant Daniel DeHerrera*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2023, I caused the forgoing to be electronically filed with the Clerk of the Court using the PACER system; I further certify that I sent a copy of the foregoing to *pro se* Plaintiff Ralph Hardy via U.S. mail, postage prepaid, to:

Ralph Marcus Hardy
DOC #110262
Bent County Correctional Facility
11560 County Road FF-75, Unite SE-107-B
Las Animas, CO 81054

*s/Michael A. Sink*
Michael A. Sink
Assistant County Attorney
Kerri A. Booth
Assistant County Attorney
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone: (720) 523-6116
Fax: (720) 523-6114
msink@adcogov.org

*Counsel for Defendant Daniel DeHerrera*