IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22–cv–02843–WJM–MDB

RALPH MARCUS HARDY,

      Plaintiff,

v.

ADAMS COUNTY, et al.,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Maritza Dominguez Braswell**

*Pro se* Plaintiff Ralph Hardy is a pretrial detainee at the Adams County Detention Facility ("ACDF"). He filed this lawsuit against Adams County, the Adams County Sheriff, and various ACDF staff, principally alleging ACDF staff retaliated against him and were deliberately indifferent to his medical needs in violation of the Fourteenth Amendment and Title II of the Americans with Disabilities Act ("ADA"). (*See generally* Second Amended Complaint ["Complaint"], Doc. No. 55.) Defendants filed three separate Motions to Dismiss. (["Motions"], Doc. Nos. 35, 78, & 80.) Plaintiff opposes all three Motions. (["Responses"], Doc. Nos. 52 & 82.) Defendants have replied. (["Replies"], Doc. Nos. 64, 83, & 84.) Having considered Plaintiff's allegations, the parties' positions, and relevant legal authority, the Court respectfully **recommends granting in part and denying in part** Defendants' Motions.

## SUMMARY FOR *PRO SE* PLAINTIFF

The Court recommends allowing several of your claims to proceed, including your claims against: Adams County, Sherriff Claps, Defendants Deherrera and Rabie, and some of your claims against Defendant Overmyer and former Sheriff Reigenborn.

1

However, the Court recommends dismissing the official-capacity claims against Defendant Overmyer because it is duplicative of your claims against Sheriff Claps. The Court also recommends dismissing the Title II claim against Defendant Overmyer and former Sheriff Reigenborn in their personal capacities, because the ADA does not provide for individual liability. And the Court recommends dismissing your excessive force claim against former Sheriff Reigenborn because your allegations about his policies, training, and supervision lack specific supporting facts.

If you disagree with this Recommendation you can object within fourteen (14) days. This is only a high-level summary of the case. Please be sure to read this Recommendation in its entirety.

## BACKGROUND

Plaintiff's lawsuit arises out of three incidents that occurred while he was a pretrial detainee at ACDF. (*See generally* Doc. No. 55.)

First, Plaintiff alleges that on October 26, 2021, two masked deputies attacked him and left him permanently disfigured after Plaintiff "exposed" a deputy for spying on him and his attorney. (*See* Doc. No. 55 at ¶¶ 7–14, 18, 42, 68.) The attack left Plaintiff confined to a wheelchair. (*Id.* at ¶¶ 13–14.) He required a "wheelchair accessible shower, toilet, sink, eating and writing table, and law kiosk." (*Id.* at ¶ 22.) Roughly four months after the alleged attack, in February 2022, ACDF transferred Plaintiff to "F-block," the only wheelchair-accessible portion of the facility available to medium-security inmates. (*Id.* at ¶¶ 56, 58.)

Second, on July 6, 2022, Sheriff Richard Reigenborn modified ACDF policy, allowing only minimum-security inmates to live in F-block. (*Id.*) Plaintiff alleges that when armed officers arrived in riot gear to transfer the medium-security inmates out of F-block, they singled Plaintiff out with harsh treatment in retaliation for his filing a lawsuit against various ACDF deputies earlier that day. (*See id.* at ¶¶ 74–76, 78–79, 81.) This transfer left Plaintiff in a non-wheelchair-accessible living unit that was "plagued by barriers that prevent wheelchair access to the eating

and writing tables, showers, sinks, and toilets inside the cells." (*Id.* at ¶ 22.) Plaintiff frequently raised his need for accommodation with ACDF's ADA Coordinator, Deputy Jennifer Overmyer. (*See, e.g.*, *id.* at ¶¶ 23–24, 38–40.) He was never transferred, and some of Deputy Overmyer's attempted work-around accommodations allegedly caused further injury. (*See id.* at ¶ 40.)

Third, on September 22, 2022, Plaintiff allegedly fell in his cell trying to "overcome the barrier that prevents safe frontal access to the cell toilet by wheelchair." (*Id.* at ¶¶ 22, 25.)Plaintiff claims that fall permanently injured his lower back. (*See id.* at ¶ 25.) Over the next thirty to forty-five minutes, Plaintiff's cellmate repeatedly activated the emergency distress button. (*Id.* at ¶¶ 26–27.) ACDF detainees receive daily instructions to push this distress button in the event of emergency and are advised that staff will respond "in seconds." (*Id.* ¶ 29.) Detention Specialist Daniel Deherrera, who was responsible for alerting jail staff to these calls, allegedly ignored the calls coming from Plaintiff's cell. (*Id.* at ¶¶ 26–27.) After Plaintiff had urinated on himself and been "immobilized" on the floor for nearly an hour, Plaintiff's cellmate tried helping him up. (*Id.* at ¶ 28.) Despite his best efforts, Plaintiff's cellmate further injured Plaintiff before eventually helping him into his wheelchair in a "contorted" position. (*Id.* at ¶¶ 28, 42.)[1]

Plaintiff contends that more than ninety minutes after he first fell, Deputy Dennis Rabie escorted inmates serving dinner to Plaintiff's cell. (*Id.* at ¶¶ 29–30.) When Deputy Rabie opened Plaintiff's cell, he "found [Plaintiff] in the same contorted position and in extreme pain." (*Id.* at ¶ 31.) Deputy Rabie immediately asked Plaintiff what happened to him. (*Id.*) In response, Plaintiff "declared a medical emergency" and said he had fallen "trying to make the wheelchair/toilet transfer." (*Id.*) Deputy Rabie told Plaintiff to "file a grievance" and then "closed the cell door in [his] face." (*Id.*)

---

[1] According to Plaintiff, a deputy told him later that evening, that Detention Specialist Deherrera's unit has "their own personal policy" of not responding to emergency distress calls "because some inmates abuse the button," and they do not want to "spend their entire shift chasing buttons." (*Id.* at ¶¶ 36–37, 45).

Plaintiff filed this lawsuit in October 2022. (*See* Doc. No. 1.) He brings claims against Adams County, former Sheriff Reigenborn in his personal capacity, Sheriff Claps in his official capacity,[2] the two masked deputies who allegedly attacked him, Deputy Rabie, Deputy Deherrera, and Deputy Overmyer in her personal and official capacities. (*See generally* Doc. No. 55.) Specifically, Plaintiff brings the following causes of action: failure to protect and excessive force against Adams County, Sheriff Claps, former Sheriff Reigenborn, and the two masked deputies (claim one) (*see id.* at ¶¶ 1–18); deliberate indifference to medical needs against Adams County, Sheriff Claps, former Sheriff Reigenborn, Deputy Rabie, Deputy Deherrera, and Deputy Overmyer (claim two) (*see id.* at ¶¶ 19–51); discrimination in violation of Title II of the ADA against Adams County, Sheriff Claps, former Sheriff Reigenborn, and Deputy Overmyer (claim three) (*see id.* at ¶¶ 52–66); and retaliation in violation of the First Amendment against Adams County, Sheriff Claps, and former Sheriff Reigenborn (claim four) (*see id.* at ¶¶ 67–86). Defendants have filed three separate Motions, which the Court analyzes below.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line

---

[2] Plaintiff initially sued Sheriff Reigenborn in in his individual and official capacities. (*See generally* Doc. No. 1.) Since then, Sheriff Claps has replaced Sheriff Reigenborn as the Adams County Sheriff. (*See* Doc. No. 59.) This Court thus substituted Sheriff Claps for former Sheriff Reigenborn as the official-capacity Defendant. (*See* Doc. No. 62.)

between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Well-pleaded factual allegations are "entitled to [an] assumption of truth," but conclusory or formulaic recitations of elements do not alone suffice. *Id.* at 678–79 (citation omitted). The court construes the complaint in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

As noted, Plaintiff is proceeding *pro se*. The court thus "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Still, although a *pro se* complaint is generally entitled to liberal construction, the plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002). A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (noting a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (explaining that the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

## ANALYSIS

Defendants submit several arguments in support of their three Motions. The Court addresses them in the following order: (I) Adams County's argument that it is not the proper party in interest in this case, coupled with Sheriff Claps' argument that he is immune from suit under the Eleventh Amendment; (II) Detention Specialist Deherrera's and Deputy Rabie's arguments that qualified immunity shields them from Plaintiff's deliberate indifference claims; (III) Deputy Overmyer's Motion to Dismiss Plaintiff's personal- and official-capacity claims against her; and (IV) former Sheriff Reigenborn's challenge to Plaintiff's personal-capacity

claims against him.

## I.      ADAMS COUNTY & SHERIFF CLAPS IN HIS OFFICIAL CAPACITY

Adams County argues Plaintiff's second and third claims against it should be dismissed because Sheriff Claps, not Adams County, is the proper party in interest. (*See* Doc. No. 35 at 6–9.) Sheriff Claps in turn argues all four official-capacity claims against him should be dismissed because he—the Adams County Sheriff—is an agent of the State, not of Adams County, and is thus entitled to Eleventh Amendment immunity. (*Id.* at 13–15.) The Court takes these arguments in turn.

### A.      Adams County's Motion to Dismiss

Adams County makes two principal arguments. First, it argues it is not the proper party in interest because "[b]y Colorado statute, Adams County['s] sole statutory obligation is to build and provide a jail to the sheriff," and it "fulfilled that obligation in 1986 by building the current detention facility." (*Id.* at 8. (citing Colo. Rev. Stat. Ann. § 30-11-104(1)(a)).) This is not Adams County's sole statutory obligation. Indeed, Adams County's lone citation for this point says the opposite. *See* Colo. Rev. Stat. Ann. § 30-11-104(1)(a) ("Each county, at its own expense, shall provide a . . . sufficient jail . . . *and keep [it] in repair*.") (emphasis added); *accord* Colo. Rev. Stat. Ann. § 17-26-102 ("The expenses of keeping the jail in good order and repair and of lighting and warming that part thereof wherein prisoners are confined . . . shall be paid by the county wherein the jail is situated.") Adams County (through its Board of Commissioners) must also at least once annually "make personal examination of the jail of its county, its sufficiency, and the management thereof and [] correct all irregularities and improprieties therein found." Colo. Rev. Stat. Ann. § 17-26-126; *accord* Colo. Rev. Stat. Ann. § 17-1-112 (referring to the "county's duty to exercise reasonable care and use its best efforts to supervise and use reasonable precautions to assure the adequate care of any state inmate").[3] Adams County's first argument is

---

[3] *See also, e.g.*, Colo. Rev. Stat. §§ 16-11-308.5, 17-26-101, 29-1-105, 30-2-106(1), 30-25-101, 30-25-104(1); *accord* Doc. No. 55 at ¶ 40 (alleging ACDF's ADA Coordinator, Deputy Overmyer, told Plaintiff Adams County had to pay for his accommodations).

therefore unpersuasive, particularly in this lawsuit where the ADA claims implicate the very facility Adams County is tasked with keeping in repair.

Second, and relatedly, Adams County argues it is not the proper party in interest because the Sheriff has exclusive power to set policy within the detention facility and Adams County lacks control over those policies. (Doc. No. 35 at 6–8.) That may ultimately prove true, but the Court finds dismissal inappropriate at this stage for several reasons.

As an initial matter, the Court is guided by Tenth Circuit caselaw. In *Gonzales v. Martinez*, the Tenth Circuit summarily dismissed the plaintiff's § 1983 claims against a Colorado county because the county did not owe a duty to supervise its sheriff's conduct. *See* 403 F.3d 1179, 1182 n.7 (10th Cir. 2005). But the court noted that "[h]ad Plaintiff claimed the Sheriff set official policy of the County or was following policy established by the County in the operation of the jail, we might have to reach a different conclusion." *Id.* (citation omitted); *accord Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1221 (10th Cir. 2002). Here, Plaintiff alleges that at all relevant times the Sheriff was acting as a final policymaker for Adams County. (*See*, *e.g.*, Doc. No. 55 at ¶¶ 2–3, 51, 60–61, 64, 66.) Additionally, Plaintiff's allegations concern the adequacy of the facility itself. Thus, to the extent the Sheriff was constrained in his ability to provide appropriate accommodations, it may be Adams County, not the Sherriff, that bears ultimate responsibility. *See, e.g.*, Colo. Rev. Stat. Ann. §§ 17-26-102, 17-26-126, 30-11-104(1)(a).

The Court, moreover, agrees with Judge William Martinez's reasoning in *Chavez v. Bd. of Cnty. Commissioners of Lake Cnty., Colorado*. 426 F. Supp. 3d 802 (D. Colo. 2019). There, Judge Martinez addressed the following question: "Who is the proper defendant to a § 1983 lawsuit alleging an injury caused by a policy or practice of the county sheriff? The sheriff's office, or the county itself (through its board of commissioners)?" *Id.* at 808. The court declined to dismiss the county from the lawsuit on at least two grounds. *Id.* at 813–14. First, the court explained that:

> Colorado law forecloses any notion that a sheriff's office should be held to account alone, independent from "the county." By statute, any money judgment "against a county of this state in the name of its board of county commissioners or against any county officer in an action prosecuted by or against him in his official capacity or name of office" must be paid either out of "the ordinary county fund" or through a special property tax, which "shall be paid over, as fast as collected by the [treasurer], to the judgment creditor." Colo. Rev. Stat. § 30-25-104(1). In other words, when a *Monell* claim is based on a sheriff-made policy, any distinction between suing the sheriff's office versus suing the county becomes purely theoretical, because the county will pay regardless.

*Id.* at 813. Second, and relatedly, the court noted that while the plaintiff had arguably failed to plead a policy attributable to the county (as opposed to the sheriff), the court:

> will not dismiss [the County] at this stage because doing so would not serve the purposes of a Rule 12(b)(6) motion. Lake County must pay any judgment against the Sheriff's Office, so the only possible significance dismissal might have is in the scope of discovery. As the Court has said in [a] similar situation, no such dismissal is warranted if discovery would either be unchanged or more complicated—which would be the result here[.]

*Id.* (citations and discussion of *Twombly* and *Iqbal*'s aims omitted). The court then cited a case declining to grant dismissal because the county did not challenge all of plaintiff's claims against it, so "all of the relevant Defendants will remain in the case regardless and will be subject to discovery." *Id.* (citing *Estate of Walter ex rel. Klodnicki v. Corr. Healthcare Cos., Inc.*, 232 F. Supp. 3d 1157, 1164 (D. Colo. 2017)). That court also found that dismissing some claims against the county "actually might complicate discovery, because [the County] would have an incentive to object to any interrogatory, deposition question, etc., to the extent [the County] believes it is really directed at [the County as opposed to the Sheriff's Office]." *Id.* at 813–14 (alterations in original).

Those considerations apply here as well. As in *Estate of Walter,* Adams County has not moved to dismiss all of Plaintiff's claims against it,[4] so it will remain in the case regardless of

---

[4] Adams County nowhere appears to argue Plaintiff's first and fourth claims against it should be dismissed.

the outcome on these Motions. And, parsing through which claims remain and which claims are dismissed, could indeed complicate discovery. Moreover, in this case, Plaintiff plausibly alleges a policy attributable to Adams County. (*See, e.g.*, Doc. No. 55 at ¶¶ 2–3, 19, 41, 45, 51–52, 60–61, 64–66.) That tends to make the argument for dismissal weaker here than in *Chavez*.[5]

The Court recommends denying Adams County's Motion to Dismiss. *See Gonzales*, 403 F.3d at 1182 n.7; *cf. Chavez*, 426 F. Supp. 3d at 813–14.

## B.     Sheriff Claps' Motion to Dismiss

Sheriff Claps has not shown he is entitled to Eleventh Amendment immunity. "Eleventh Amendment immunity applies not only to a state but also to an entity that is the arm of the state." *Couser v. Gay*, 959 F.3d 1018, 1022 (10th Cir. 2020). To determine whether an entity constitutes an arm of the state, the Tenth Circuit examines four primary factors: "(1) state law characterization of the entity, (2) the entity's autonomy from the state, (3) the entity's finances and financial independence from the state, and (4) whether the entity addresses matters of local or state-wide concern." *Hennessey v. Univ. of Kansas Hosp. Auth.*, 53 F.4th 516, 526 (10th Cir. 2022). The burden of making this showing falls on the entity asserting it is an arm of the state. *Id.* at 529–32. And as Sheriff Claps acknowledges, the arm-of-the-state inquiry "is not a 'categorical, "all or nothing"' one, but must be determined in 'a particular area, or on a particular issue.'" (Doc. No. 35 at 14 (quoting *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 795 (1997) and *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1220 n.26 (10th Cir. 2022)).)

Sheriff Claps does not mention these four factors. (*See generally* Doc. No. 35 at 13–15.) To any extent that he implicitly addresses them, he does so by making two broad statements of

---

[5] Adams County briefly argues *Chavez* was wrongly decided, stating *Chavez* "is directly inconsistent with" *Lewis v. Clarke*, 581 U.S. 155 (2017). (*See* Doc. No. 35 at 8 n.5.) But *Lewis* is a case about "whether an indemnification clause is sufficient to extend a [tribal] sovereign immunity defense to a suit against a [tribal] employee in his individual capacity[,]" 581 U.S. at 164, and Adams County's cursory and somewhat conclusory argument that *Chavez* is directly inconsistent is not persuasive.

law: he proffers that Colorado sheriffs rely on "a variety of federal and state grants," among other funding sources[6]; and he observes that Colorado delegates its power of incarceration to county sheriffs by statute. (*See id.* at 14 (citing no statute).) Outside of these broad statements, Sheriff Claps primarily relies on a case that explicitly acknowledges its holding is specific to Alabama, *see McMillian*, 520 U.S. at 795 (noting "since it is entirely natural that both the role of sheriffs and the importance of counties vary from State to State, there is no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another"), and an analysis of Utah prosecutors explicitly tasked by statute with acting "on behalf of the state," *see Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (citing Utah Code Ann. § 17 18a-401). Sheriff Claps points to no comparable Colorado statute or case holding a Colorado sheriff immune under the Eleventh Amendment. Thus, his Eleventh Amendment argument fails.

## II.   DETENTION SPECIALIST DEHERRERA'S & DEPUTY RABIE'S MOTIONS TO DISMISS PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIMS

Defendants Deherrera and Rabie separately move to dismiss Plaintiff's deliberate indifference claims against them, both arguing they are entitled to qualified immunity. (*See* Doc. Nos. 78 at 1–10 & 80 at 1–12.) The Supreme Court has created a two-part test for deciding whether a defendant is entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). The Court must decide whether (1) "the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* The Court applies this two-part test, below.

### A.   Plaintiff has plausibly alleged deliberate indifference claims against both Detention Specialist Deherrera and Deputy Rabie.

The Fourteenth Amendment's Due Process Clause prohibits deliberate indifference to the

---

[6] The two statutes Sheriff Claps cites do not relate to funds flowing from Colorado (or the United States) to a sheriff's office.

medical needs of a pretrial detainee in state custody. *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985). To state a cognizable deliberate indifference claim, a Plaintiff must make a two-part showing comprising (1) an objective prong and (2) a subjective prong. *Strain v. Regalado*, 977 F.3d 984, 989–90 (10th Cir. 2020). As to the objective prong, a detainee claiming he was harmed "by a delay in medical treatment . . . must show that the delay resulted in substantial harm." *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (internal quotation marks and citation omitted). The "substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* (citation omitted). Thus, "the substantial harm caused by a delay in treatment may be a permanent physical injury, or it may be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics." *Id.* (internal quotation marks and citation omitted). The subjective prong requires that a defendant act with "a sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (citation omitted). A defendant has the necessary state of mind if he knew an inmate "faced a substantial risk of harm and disregarded that risk." *Id.* at 939 (citation omitted). A detainee need not prove the defendant had actual knowledge of the danger or actually intended that harm befall the detainee. *See Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005). Rather, it is enough that circumstantial evidence supports an inference that a defendant failed to verify or confirm a "risk that he strongly suspected to exist." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 n.8 (1994)).

Here, the Court has no trouble finding Plaintiff satisfies both prongs against both Defendants. Plaintiff alleges he fell in his cell and permanently injured his lower back. (*Id.* at ¶¶ 22, 25.) The fall "immobilized" him. (*Id.* at ¶ 25.) He allegedly soiled himself because of the extreme pain and his inability to move. (*Id.* at ¶¶ 27–28, 31.) Detention Specialist Deherrera—the ACDF official tasked with alerting floor deputies when detainees press the emergency distress button—allegedly ignored the emergency distress calls coming from Plaintiff's cell because "chasing buttons" was not worth his or his unit's time. (*Id.* at ¶¶ 26–27, 45.) That led to an additional injury to Plaintiff when his cellmate tried lifting him into his wheelchair. (*Id.* at ¶¶

28, 42.) It also prolonged Plaintiff's suffering for at least several hours and delayed his visiting with medical personnel who could have assessed and assisted him.

Accepting Plaintiff's well-pleaded allegations as true, Plaintiff plausibly alleges Detention Specialist Deherrera's ignoring his emergency distress calls caused him substantial harm (the objective prong). *See Al-Turki*, 762 F.3d at 1193 (noting the "substantial harm" caused by a delay in treatment may be based on "an intermediate injury, such as the pain experienced while waiting for treatment and analgesics"); *Chapman v. Santini*, 805 F. App'x 548, 553 (10th Cir. 2020) (unpublished) ("Several hours of untreated severe pain counts as substantial harm."). Plaintiff also plausibly alleges Detention Specialist Deherrera had a sufficiently culpable state of mind (the subjective prong) because he received the emergency distress calls coming from Plaintiff's cell but "made no attempt to determine the severity of [Plaintiff's] medical need." *Burke v. Regalado*, 935 F.3d 960, 994 (10th Cir. 2019); *see Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1162 (10th Cir. 2022) (A gatekeeping jail official's failing to comply with jail policy "certainly provides circumstantial evidence that [he] knew of a substantial risk of serious harm." (quotation marks and citation omitted)); *cf. Havens v. Clements*, No. 13-cv-00452, 2014 WL 1213804, at *17 (D. Colo. Mar. 24, 2014) (disabled plaintiff's allegations that he pressed the nurses' call button several times and was required to lay on the floor in unsanitary conditions for several hours were "sufficient to establish that [defendants] knew of and disregarded" a substantial risk to plaintiff's health); *Velez v. Johnson*, 395 F.3d 732, 736 (7th Cir. 2005) (noting pretrial detainee's pressing emergency distress button is "a clear indication that an emergency [i]s at hand").

Detention Specialist Deherrera submits he cannot be liable because he did not directly interact with Plaintiff on the day he fell, and a § 1983 claim requires direct personal participation by each defendant. (*See* Doc. No. 80 at 6–7.)[7] The Court disagrees. To state a cognizable

---

[7] In support of his position, Defendant Deherrera cites only *Bennett v. Passic*, 545 F.2d 1260 (10th Cir. 1976). But there, unlike here, the plaintiff did not "allege any injury or damage resulting from the delay" or that any defendant "caused the delay." *Id.* at 1262.

deliberate indifference claim, "Plaintiff must allege acts *or omissions* sufficiently harmful to evidence deliberate indifference to serious medical needs." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (emphasis added). Again, Plaintiff alleges Defendant Deherrera caused him substantial harm by failing to relay Plaintiff's distress calls. (*See* Doc. No. 55 at ¶¶ 26–27, 45 (plausibly alleging Detention Specialist Deherrera failed to relay Plaintiff's repeated emergency distress calls to jail staff because doing so was not worth his time).) Here, and at this stage in the litigation, the alleged omissions are enough to demonstrate personal participation.

As to Deputy Rabie, Plaintiff alleges Deputy Rabie found him in a "contorted position" and in "extreme pain." (Doc. No. 55 at ¶ 31.) Plaintiff then asked Deputy Rabie for "immediate medical attention" due to his "medical emergency." (*Id.*) Deputy Rabie allegedly told Plaintiff to "file a grievance" and walked away. (*Id.*) Like the allegations against Detention Specialist Deherrera, the allegations against Deputy Rabie satisfy the subjective and objective prongs because the alleged inaction prolonged Plaintiff's suffering and delayed his visiting with medical personnel who could have assessed and assisted him, and the allegations that Deputy Rabie saw Plaintiff and spoke to him are sufficient to reflect a culpable state of mind. *See Al-Turki*, 762 F.3d at 1193; *Sealock*, 218 F.3d at 1211; *Mata*, 427 F.3d at 755 (finding evidence of a three-minute delay in seeking medical attention was sufficient to preclude summary judgment; noting "[e]ven a brief delay may be unconstitutional"); *cf. Burke v. Regalado*, 935 F.3d 960, 994 (10th Cir. 2019) (noting a reasonable jury could find jail officials "failed to fulfill their gatekeeping role" for plaintiff who told them he was experiencing paralysis).

In sum, Plaintiff plausibly alleges both Defendants were deliberately indifferent to his medical needs. *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1139 (10th Cir. 2023) ("[D]oing nothing in the face of serious medical needs is obviously sufficient to state a claim."); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) ("Deliberate indifference to serious medical needs is shown when prison officials [deny an inmate] access to medical personnel capable of evaluating the need for treatment."). The Court thus turns to whether Plaintiff's rights were "clearly established" at the time of Defendants' alleged misconduct.

### B.     The law was clearly established.

The law is clearly established when there is an "on point" Supreme Court or Tenth Circuit decision, "or the clearly established weight of authority from other courts have found the law to be as the plaintiff maintains." *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1178 (10th Cir. 2020) (citation omitted). The court must be careful not to define clearly established law "at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted). Instead, the "rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (internal quotation marks and citation omitted).

At the same time, this inquiry does not require a "scavenger hunt for prior cases with precisely the same facts." *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (citation omitted). Indeed, "'general statements of the law' can clearly establish a right for qualified immunity purposes if they apply 'with obvious clarity to the specific conduct in question.'" *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (alteration in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *see Est. of Smart*, 951 F.3d at 1168 ("[A] prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law."). The "key question is whether the defendants had fair warning that their conduct was unconstitutional." *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1167 (10th Cir. 2022), *cert. denied sub nom. Anderson, Kori, et al. v. Calder, Tristen*, No. 22-735, 2023 WL 4163212 (U.S. June 26, 2023).

Here, "general statements of the law . . . apply with obvious clarity" to Defendants' conduct. *Halley*, 902 F.3d at 1149 (quotation marks and citation omitted). And "there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right." *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005); *see also id.* at 751 (It is "clearly established in [the Tenth Circuit] that a delay in medical care constitutes [a constitutional] violation where the plaintiff can show the delay resulted in substantial harm."). Accepting Plaintiff's well-pleaded allegations as true, both Defendants' alleged indifference was

directly contrary to well-established Supreme Court and Tenth Circuit precedent. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("[E]lementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration."); *Lance v. Morris*, 985 F.3d 787, 798–800 (10th Cir. 2021) (adopting appellant's argument that Tenth Circuit "precedents have clearly established a jail guard's constitutional obligation to obtain medical care when (1) a detainee experiences severe pain and (2) the jail guard controls access to medical care"); *Burke v. Regalado*, 935 F.3d 960 (10th Cir. 2019) (A jail official is deliberately indifferent to a detainee's medical needs when they are "confronted with serious symptoms [and take] no action to treat them."); *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1033 (10th Cir. 2020) ("[P]rior to January 2016, it was clearly established that when a detainee has obvious and serious medical needs, ignoring those needs necessarily violates the detainee's constitutional rights."); *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) ("[D]eliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment.").

Additionally, for many years before September 2022 (the date of the alleged incident), the Tenth Circuit had held that jail officials may not ignore a detainee's pleas for medical assistance in sufficiently analogous contexts. *See, e.g.*, *Burke v. Regalado*, 935 F.3d 960, 994 (10th Cir. 2019) (finding jail officials who left plaintiff immobile in his cell after plaintiff told them that he could not move and that he was experiencing paralysis "either dismissed [plaintiff] as a malingerer without undertaking any investigation into his condition or abdicated their gatekeeping roles by failing to relay the problem to medical staff"); *Al-Turki v. Robinson*, 762 F.3d 1188, 1194 (10th Cir. 2014) (affirming denial of qualified immunity where the defendants allegedly ignored repeated calls for help from inmate who they knew was experiencing severe abdominal pain); *Mata v. Saiz*, 427 F.3d 745, 755, 758 (10th Cir. 2005) (finding jail official failed to fulfill gatekeeping duty when inmate sought medical attention for severe chest pain and jail official refused to provide or summon medical assistance; *see generally Prince v. Sheriff of*

*Carter Cnty.*, 28 F.4th 1033, 1047–48 (10th Cir. 2022) (collecting several analogous Tenth Circuit cases "clearly establishing that deliberate indifference to [serious medical needs] violates the Constitution") (citations omitted). Thus, the Court recommends finding that at this juncture Detention Specialist Deherrera and Deputy Rabie are not entitled to qualified immunity.

## III.   DEPUTY OVERMYER'S MOTION TO DISMISS

Deputy Overmyer moves to dismiss Plaintiff's official- and personal-capacity claims for deliberate indifference in violation of the Fourteenth Amendment and discrimination in violation of Title II of the ADA. (*See* Doc. No. 35 at 15–17.) As discussed above, Plaintiff's claims against Sheriff Claps will proceed. There is thus no need to keep Plaintiff's official-capacity claims against Deputy Overmyer.[8] *See Stump*, 777 F. Supp. at 816 n.3 (explaining a § 1983 action need only be brought against municipality or a municipal official in her official capacity); *see also Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) (same as to Title II claims). The Court thus recommends dismissing Plaintiff's two claims against Deputy Overmyer in her official capacity.

Turning now to Plaintiff's personal-capacity claims against Deputy Overmyer, the Court first recommends dismissing Plaintiff's Title II claim because Title II of the ADA does not provide for individual liability. *See* 42 U.S.C. § 12132 (providing disabled individuals redress for discrimination by a "public entity"); *see also* 42 U.S.C. § 12131 (defining public entity); *cf. Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 744 (10th Cir. 1999) (holding "the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition").

As to Plaintiff's deliberate indifference claim, Deputy Overmyer argues Plaintiff fails to

---

[8] As explained above, the Court recommends keeping Sheriff Claps in his official capacity because the discovery-related reasoning in *Chavez* applies to him. That reasoning does not apply to Deputy Overmyer.

state a claim, and she briefly invokes qualified immunity.[9] Deputy Overmyer's first argument under Rule 12(b)(6) lacks any citation to the record or caselaw, and it generally tracks the "I cannot be liable because I did not directly participate in the harm" line of argument the Court rejected above. *See supra* Section II(A). But as with Plaintiff's allegations against Detention Specialist Deherrera, his allegations against Deputy Overmyer are sufficient. Plaintiff alleges Deputy Overmyer caused the fall that permanently injured his back because she was responsible for the facility's accommodations, and she knew of and disregarded a high and obvious risk of harm in the non-wheelchair-accessible cell. (*See* Doc. No. 55 at ¶¶ 22–23, 38–40.) Whether this can be characterized as an act or omission is irrelevant. The Court concludes these allegations are sufficient, at least at this stage, to link Deputy Overmyer to the incident.

In her Reply, Deputy Overmyer pivots to challenging the sufficiency of Plaintiff's allegations, this time contending the allegations do not demonstrate she knew or believed her refusal would pose a risk, and also arguing that "potential risk" is not the standard. (Doc. No. 64 at 8.) But Plaintiff repeatedly alleges Deputy Overmyer knew Plaintiff faced a serious and obvious risk of harm, citing to statements she made and responsibilities she had; he also alleges Deputy Overmyer chose to disregard that risk. (*See, e.g.*, Doc. No. 55 at ¶¶ 21–24, 38–41; Doc. No. 52 at 10 (reiterating allegations that Plaintiff filed many administrative complaints about barriers in his cell directly with Deputy Overmyer and that she "consciously or deliberately chose to disregard the known or obvious risk of harm" to him)); *see also Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) ("An official 'would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 n.8 (1994))).

---

[9] In her Motion to Dismiss, Deputy Overmyer briefly invokes qualified immunity with respect to "counts two and four." (Doc. No. 35 at 17.) But as Deputy Overmyer acknowledges in her Reply, Plaintiff does not bring count four against Deputy Overmyer. (Doc. No. 64 at 6.) The Court thus only considers Deputy Overmyer's qualified immunity invocation with respect to count two.

Finally, Deputy Overmyer avers Plaintiff has not stated a claim against her because he "has alleged an intervening cause—the other deputies' failure to timely respond to his emergency distress call." (Doc. No. 64 at 8.) This (and other arguments) mischaracterizes Plaintiff's claim, which is not that she is responsible for the delay in care or the injuries resulting from the delay, but that she is responsible for the fall itself. (*See* Doc. No. 55 at ¶ 38 ("The fall causing [Plaintiff's] injury was the proximate result of Deputy Overmyer's deliberate indifference to [his] disability needs.").) In some respects, Deputy Overmyer asks the Court to accept her version of the facts over Plaintiff's version,[10] something the Court cannot do at this stage of the litigation.

In addition to arguing Plaintiff fails to state a claim against her for deliberate indifference, Deputy Overmyer invokes qualified immunity in the following sentence: "To the extent counts two and four are not dismissed on other grounds, Deputy Overmyer has qualified immunity for both counts for the same reasons set forth in Section II.B., *supra*." (Doc. No. 35 at 17.) Below, the Court discusses and rejects Defendant's Section II.B. argument as inadequately presented. *See infra* Section IV(B). The Court also rejects it here. Deputy Overmyer has not adequately presented a qualified immunity defense to Plaintiff's second claim, and the Court therefore declines to address it further at this stage. *See Tillmon v. Cty. of Douglas*, No. 18-cv-00492, 2019 WL 1375678, at *12 (D. Colo. Mar. 27, 2019) (declining to rule on qualified immunity defense where defendants "offer[ed] no arguments and no law" to support a qualified-immunity defense), *aff'd*, 817 F. App'x 586, 589 (10th Cir. 2020) (unpublished) (declining to address qualified immunity on appeal because the argument was not properly preserved, as the "analysis of qualified immunity in [the motion to dismiss] was cursory at best" and "consisted of

_____

[10] Plaintiff repeatedly points this out. *E.g.*, Doc. No. 52 at 2 (observing that "counsel for the defendants is omitting and delineating his own personal version" of Plaintiff's well-pleaded facts); *id.* at 10 n.5 ("Once again, [Defendant's] counsel provides his own version of the facts" concerning Plaintiff's deliberate indifference claim against Deputy Overmyer.); Doc. No. 82 at 1 (observing that Defendants' counsel "wish to provide their own version of the actual facts that have been well pleaded in the Second Amended Complaint").

a single paragraph briefly discussing the law of qualified immunity"). The Court recommends denying Deputy Overmyer's Motion to Dismiss Plaintiff's deliberate indifference claim against her in her personal capacity.

## IV.    SHERIFF REIGENBORN'S MOTION TO DISMISS PERSONAL-CAPACITY CLAIMS

Former Sheriff Reigenborn moves to dismiss all four of Plaintiff's claims against him in his personal capacity. (*See* Doc. No. 35 at 9–13.) First, he argues he is entitled to qualified immunity on Plaintiff's deliberate indifference and retaliation claims. (*See id.* at 10–12.) Second, he argues Plaintiff fails to state an ADA or excessive force claim against him. (*See id.* at 12–13.) The Court takes these arguments in turn.

### A.    Qualified immunity argument

Sherriff Reigenborn's qualified immunity argument is as follows:

> Mr. Hardy will be unable to point to any Supreme Court or Tenth Circuit precedent construing the Constitutional or statutory provisions at issue as requiring a County Sheriff to modify otherwise appropriate security classifications to accommodate an inmate's request for more readily wheelchair-accessible housing. Nor is there a legal obligation to exempt an inmate from a group-wide housing reassignment based on security levels merely because the inmate happens to be a plaintiff in federal lawsuit. Sheriff Reigenborn had no basis, let alone a clearly established basis, to believe he was under a duty under either Fourteenth Amendment or the ADA to accommodate Mr. Hardy's requests. As such, Sheriff Reigenborn is entitled to qualified immunity and should be dismissed with prejudice from this case.

(*Id.* at 11–12.)

It appears Sheriff Reigenborn is arguing under the second prong: clearly established law. But Sheriff Reigenborn's framing misses the mark. He focuses on modification of security classifications to accommodate an inmate, but that is only one aspect of Plaintiff's many claims against Sheriff Reigenborn. Plaintiff also alleges misconduct by Sheriff Reigenborn concerning (1) his failure to properly train ACDF's ADA coordinator, (2) his role in allegedly approving ACDF staff's policy of not responding to emergency distress buttons, (3) his role in failing to

discipline or investigate ACDF staff for violating detainees' rights, and (4) his role in approving a broad range of harsh adjustments to Plaintiff's living conditions in retaliation for Plaintiff's filing a well-known lawsuit against ACDF. (*See, e.g.*, Doc. No. 55 at ¶¶ 37, 40–46, 48–51, 78–79, 85.) Defendant has not adequately raised a qualified immunity defense at this stage.

### B.       Rule 12(b)(6) arguments

As noted, Sheriff Reigenborn argues Plaintiff fails to state an ADA or excessive force claim against him. (*See* Doc. No. 35 at 12–13.) The Court recommends dismissing Plaintiff's Title II claim against former Sheriff Reigenborn in his personal capacity because, as explained above, Title II of the ADA does not provide for individual liability. *See* 42 U.S.C. § 12132 (providing disabled individuals redress for discrimination by a "public entity"); *see also* 42 U.S.C. § 12131 (defining public entity); *cf. Butler*, 172 F.3d at 744.

As to Plaintiff's excessive force claim, Sheriff Reigenborn argues it should be dismissed because the allegations do not demonstrate he had "prior knowledge" that the masked deputies would beat Plaintiff in the precise manner that they did. (Doc. No. 35 at 12.) This argument is not persuasive as there is no requirement that Plaintiff demonstrate such precise prior knowledge. *See generally Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

However, the Court is persuaded that "[a]ll [Plaintiff] alleges is a conclusory failure to train or supervise on the part of Sheriff Reigenborn." (Doc. No. 35 at 12.) Plaintiff alleges his injuries stem directly from former Sheriff Reigenborn's policy and practice of directing his deputies to use excessive force against non-combative inmates and having his staff deny medical care to injured detainees "in order to prevent medical documentation of [his deputies'] unlawful conduct in an attempt to escape liability for their misconduct." (*Id.* at ¶¶ 13–16, 18.) However, Plaintiff does not allege any specific instances where Sherriff Reigenborn "encouraged his deputies" to violate civil rights; nor does Plaintiff point to any comments or statements—by Sheriff Reigenborn or anyone else— reflecting Sheriff Reigenborn's personal participation in the creation or implementation of a policy, practice, or training. At best, Plaintiff alleges that former

Sheriff Reigenborn had some "abstract authority over [the] individuals who actually" attacked

Plaintiff. *Fogarty*, 523 F.3d at 1162. For example, Plaintiff alleges that:

> Defendant Reigenborn has fostered a culture of deliberate indifference to the bodily safety and well-being of inmates in his custody and control. He has tolerated and encouraged his deputies['] acts of deliberate indifference to clearly established law, and the civil rights of inmates in ACDF, by inadequately investigating and disciplining his subordinate employees for their frequent and ongoing egregious conduct towards persons with whom they come into contact. . . .

> Adams County and Defendant Reigenborn are frequently subject to suit for their deliberate acts or omissions, and the civil rights violations committed by their subordinate employees, and this is just another instance where employees of Adams County and Sheriff Reigenborn have intentionally and maliciously violated the rights of a detainee. . . .

> Sheriff Reigenborn has promulgated, created, implemented or possessed responsibility for, a policy, custom, or practice of depriving inmates medical care after being the victims to the use of excessive force by his deputies in order to prevent medical [documentation] of their unlawful conduct, in an attempt to escape liability for their misconduct. . . .

> [In assaulting Plaintiff, the two deputies acted] how Sheriff Reigenborn has trained them to act, and wanted them to act. The deputies acts and/or omissions were never investigated although reported, and thus, they were never disciplined for their misconduct. . . . [Plaintiff] contends that his complaint fell on deaf ears because the tower deputy he reported it to found nothing worth reporting because it is a routine act by Adams County Deputies, because it is how they are trained to act and how Sheriff Reigenborn expects them to act as their direct or constructive supervisor.

(Doc. No. 55 at ¶¶ 5, 6, 13, 16, 18.) Even drawing all inferences in Plaintiff's favor and

construing his pleading liberally, these allegations are not sufficient to survive a motion to

dismiss because they simply conclude—without any alleged factual support—that Sherriff

Reigenborn fostered a problematic culture, encouraged deputies to violate civil rights, and failed

to discipline. Using Sherriff Reigenborn's name multiple times in connection with general and

conclusory allegations about problematic training and conduct is not a substitute for specific

allegations linking Sherriff Reigenborn to the incident.

To be clear, the Court does not agree with Defendant's articulation of the standard—which appears to be one of direct personal participation in the incident. (Doc. No. 35 at 12.; *see* Doc. No. 64 at 6.) Plaintiff does not have to allege Sherriff Reigenborn directly participated in the incident. But Plaintiff does have to allege an "affirmative link … between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Fogarty*, 523 F.3d at 1162 (quotations omitted). And the allegations supporting that link cannot be as conclusory as they are here. *See Iqbal*, 556 U.S. at 678. For these reasons, the Court recommends dismissal without prejudice as it concerns the personal-capacity excessive force claim against Sherriff Reigenborn,[11] giving Plaintiff an opportunity to amend if he believes he has specific allegations in support of such claim.

## CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS DENYING in part and GRANTING in part** Defendants' Motions to Dismiss. Specifically, the Court **RECOMMENDS**:

- **DENYING** Adams County's motion as to Plaintiff's second and third claims against it;

- **DENYING** Sheriff Claps' motion as to Plaintiff's official-capacity claims against him;

- **DENYING** Detention Specialist Deherrera's and Deputy Rabie's motions as to Plaintiff's deliberate indifference claims against them;

- **GRANTING** Deputy Overmyer's motion as to Plaintiff's official-capacity claims against her;

- **GRANTING** Deputy Overmyer's motion as to Plaintiff's Title II claim against her in her personal capacity;

---

[11] The lack of specific facts alleging a link between Sheriff Reigenborn and the incident at issue may be fatal to Plaintiff's deliberate indifference and retaliation claims as well. However, it appears Sheriff Reigenborn did not challenge the deliberate indifference and retaliation claims on these grounds and relied instead on an underdeveloped "clearly established law" argument.

- **DENYING** Deputy Overmyer's motion as to Plaintiff's deliberate indifference claim against her in her personal capacity;

- **DENYING** former Sheriff Reigenborn's Motion as to Plaintiff's deliberate indifference and retaliation claims against him in his personal capacity;

- **GRANTING** former Sheriff Reigenborn's Motion as to Plaintiff's Title II claim against him in his personal capacity; and

- **GRANTING** former Sheriff Reigenborn's Motion as to Plaintiff's excessive force claim against him in his personal capacity, but ordering a dismissal without prejudice.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the district judge and will result in a waiver of the right to appeal from a judgment of the district court based on the magistrate judge's proposed findings and recommendations. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52

F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (noting firm waiver rule does not apply when the interests of justice require review).

Dated July 19, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge