**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 22-cv-2843-WJM-MDB

RALPH MARCUS HARDY,

     Plaintiff,

v.

ADAMS COUNTY, *et al*.,

     Defendants.

---

**ORDER ADOPTING IN PART, ADOPTING AS MODIFIED IN PART, AND
REJECTING IN PART THE JULY 19, 2023 RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

---

     This matter is before the Court on the July 19, 2023 Recommendation by U.S.

Magistrate Judge Maritza Dominguez Braswell (the "Recommendation") (ECF No. 86)

that the Court:

- deny Adams County's motion as to *pro se*[1] Plaintiff Ralph Marcus

  Hardy's[2] second and third claims against it;

- deny Sheriff Claps's motion as to Plaintiff's official capacity claims against

  him;

- deny Detention Specialist DeHerrera's and Deputy Rabie's motions as to

---

[1] Plaintiff is proceeding *pro se*, and therefore, the court thus "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

[2] So the Court may more easily read his filings, and in compliance with Local Civil Rule 10.1(e), the Court directs Plaintiff to **double-space** any future filings (whether handwritten or typed) he submits to the Court.

Plaintiff's deliberate indifference claims against them;

- grant Deputy Overmyer's motion as to Plaintiff's official capacity claims against her;

- grant Deputy Overmyer's motion as to Plaintiff's Title II claim against her in her individual capacity;

- deny Deputy Overmyer's motion as to Plaintiff's deliberate indifference claim against her in her individual capacity;

- deny former Sheriff Reigenborn's motion as to Plaintiff's deliberate indifference and retaliation claims against him in his individual capacity;

- grant former Sheriff Reigenborn's motion as to Plaintiff's Title II claim against him in his individual capacity; and

- grant former Sheriff Reigenborn's motion as to Plaintiff's excessive force claim against him in his individual capacity, but order a dismissal without prejudice.

(*Id.* at 21–22.)  The Recommendation is incorporated herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

Deputy Rabie and Sheriff Claps filed Objections to the Recommendation ("Rabie/Claps Objections").  (ECF No. 88.)  Adams County filed Objections to the Recommendation ("Adams County Objections").  (ECF No. 89.)  Sheriff Reigenborn, Detention Specialist DeHerrera, and Deputy Overmyer filed Objections to the Recommendation ("Reigenborn/DeHerrera/Overmyer Objections").  (ECF No. 90.) Plaintiff did not file any objections to the Recommendation, nor did he respond to any of Defendants' Objections.

## I. BACKGROUND

This lawsuit arises out of three incidents that occurred while Plaintiff was a pretrial detainee at the Adams County Detention Facility ("ACDF").  (ECF No. 86 at 2.) The Court assumes the parties' familiarity with the facts and incorporates by reference the Background section contained in the Recommendation, which relies on the facts alleged in Plaintiff's Second Amended Complaint ("SAC") (ECF No. 55).[3]  (*See* ECF No. 86 at 2–4.)

## II. RECOMMENDATION

Plaintiff filed this lawsuit in October 2022.  (*See* ECF No. 1.)  He brings claims against Adams County, Colorado ("Adams County"), former Sheriff Reigenborn in his personal capacity, Sheriff Claps in his official capacity, the two masked deputies who allegedly attacked him, Deputy Rabie, Deputy DeHerrera, and Deputy Overmyer in her personal and official capacities.[4]  (*See generally* ECF No. 55.)

Specifically, Plaintiff brings the following causes of action: failure to protect and excessive force under 42 U.S.C. § 1983 against Adams County,[5] Sheriff Claps, former

---

[3] The Court assumes the allegations contained in the SAC are true for the purpose of resolving the Motions to Dismiss.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4] Plaintiff initially sued Sheriff Reigenborn in in his individual and official capacities. (*See generally* ECF No. 1.)  Since then, Sheriff Claps has replaced Sheriff Reigenborn as the Adams County Sheriff. (*See* ECF No. 59.)  Therefore, the Court substituted Sheriff Claps for former Sheriff Reigenborn as the official capacity defendant. (*See* ECF No. 62.)

[5] Plaintiff has named "Adams County, a municipality" as a defendant.  (ECF No. 55.) However, in another case, the undersigned observed that "[u]nder Colorado law, any suit against a county must be brought in the name of the 'board of county commissioners of the county'"[.]  *Estate of Blodgett v. Correct Care Sols., LLC*, 2018 WL 6528109, at *8 (D. Colo. Dec. 12, 2018) (quoting Colo. Rev. Stat. § 30-11-105).  "An action attempted to be brought under any other designation is a nullity, and no valid judgment can enter in such a case."  *Id.* (quoting *Calahan v. Jefferson Cnty.*, 429 P.2d 301, 302 (Colo. 1967)).  "The Tenth Circuit views this statutory provision as jurisdictional."  *Id.* (citing *Gonzales v. Martinez*, 403 F.3d 1179, 1182

Sheriff Reigenborn, and the two masked deputies (Claim 1) (*see id.* at ¶¶ 1–18);

deliberate indifference to medical needs under 42 U.S.C. § 1983 against Adams

County, Sheriff Claps, former Sheriff Reigenborn, Deputy Rabie, Detention Specialist

DeHerrera, and Deputy Overmyer (Claim 2) (*see id.* at ¶¶ 19–51); discrimination in

violation of Title II of the ADA and/or under 42 U.S.C. § 1983 against Adams County,

Sheriff Claps, former Sheriff Reigenborn, and Deputy Overmyer (Claim  3) (*see id.* at ¶¶

52–66); and retaliation in violation of the First Amendment under 42 U.S.C. § 1983

against Adams County, Sheriff Claps, and former Sheriff Reigenborn (Claim 4) (*see id.*

at ¶¶ 67–86).

Defendants have filed three separate motions to dismiss, which the Magistrate

Judge analyzed in the Recommendation.

**A.    Adams County & Sheriff Claps in His Official Capacity**

1.    Adams County's Motion to Dismiss

In the Recommendation, the Magistrate Judge addressed Adams County's

arguments that (1) it is not the proper party in interest because "[b]y Colorado statute,

Adams County['s] sole statutory obligation is to build and provide a jail to the sheriff,"

and it "fulfilled that obligation in 1986 by building the current detention facility"; and (2) it

is not the proper party in interest because the Sheriff has exclusive power to set policy

within the detention facility, and Adams County lacks control over those policies.  (ECF

---

n.7 (10th Cir. 2005)).  "Therefore, Plaintiff's failure to properly name the board of county
commissioners of Montrose County alone is grounds for dismissal."  *Id.* (citing *Hand v.
Cummings*, 2012 WL 4442752, at *2 (D. Colo. Aug. 8, 2012)).

As in *Estate of Blodgett*, Plaintiff has named the incorrect municipal defendant.  In the
Third Amended Complaint, he must name the proper municipal defendant, the Adams County
Board of County Commissioners.  **Should he fail to do so, his claims against the municipal
defendant will be subject to dismissal without prejudice WITHOUT FURTHER NOTICE**.

No. 86 at 6–7.)

With respect to Adams County's first argument, the Magistrate Judge found it unpersuasive because Adams County's sole obligation is not only to build and provide a jail, but according to the Colorado statutes, it *also* must "keep it in repair."  (*Id.* (citing Colo. Rev. Stat. Ann. § 30-11-104(1)(a) ("Each county, at its own expense, shall provide a . . . sufficient jail . . . and keep [it] in repair.")).)

Concerning Adams County's second argument, the Magistrate Judge found dismissal inappropriate at this stage of the litigation.  She observed that Plaintiff alleges that at all relevant times, the Sheriff was acting as a final policymaker for Adams County and that Plaintiff's allegations concern the adequacy of the facility itself.  (*Id.* at 7.) Accordingly, to the extent the Sheriff was constrained in his ability to provide appropriate accommodations, it may be Adams County, not the Sheriff, that bears ultimate responsibility.  (*Id.* (citing Colo. Rev. Stat. §§ 17-26-102, 17-26-126, 30-11-104(1)(a)).)  Ultimately, the Magistrate Judge recommended denying Adams County's motion to dismiss Claims 2 and 3.  (*Id.* at 9.)

### 2.   Sheriff Claps's Motion to Dismiss

Sheriff Claps argues that all four official capacity claims against him should be dismissed because he—the Adams County Sheriff—is an agent of the State, not of Adams County, and is thus entitled to Eleventh Amendment immunity.  (*Id.* at 6, 9.) "Eleventh Amendment immunity applies not only to a state but also to an entity that is the arm of the state."  *Couser v. Gay*, 959 F.3d 1018, 1022 (10th Cir. 2020).

To determine whether an entity constitutes an arm of the state, the Tenth Circuit examines four primary factors: "(1) state law characterization of the entity, (2) the entity's autonomy from the state, (3) the entity's finances and financial independence

from the state, and (4) whether the entity addresses matters of local or state-wide concern." *Hennessey v. Univ. of Kan. Hosp. Auth.*, 53 F.4th 516, 526 (10th Cir. 2022). The burden of making this showing falls on the entity asserting it is an arm of the state. *Id*. at 529–32.  And as Sheriff Claps acknowledges, the arm-of-the-state inquiry "is not a categorical, all or nothing one, but must be determined in a particular area, or on a particular issue."  (ECF. No. 35 at 14 (quoting *McMillian v. Monroe Cnty., Ala*., 520 U.S. 781, 795 (1997) (quotation marks omitted) and *Chilcoat v. San Juan Cnty*., 41 F.4th 1196, 1220 n.26 (10th Cir. 2022)).)

In the Recommendation, the Magistrate Judge pointed out that Sheriff Claps fails to mention these four factors.  (ECF No. 86 at 9.)  Rejecting the arguments he does raise, the Magistrate Judge observed that Sheriff Claps points to no comparable Colorado statute or case holding a Colorado sheriff immune under the Eleventh Amendment and concluded that his Eleventh Amendment argument fails.  (*Id*. at 10.)

**B.     Detention Specialist DeHerrera and Deputy Rabie's Motions to Dismiss Plaintiff's Deliberate Indifference Claims**

The Magistrate Judge had "no trouble" concluding that Plaintiff sufficiently alleged both the objective and subjective elements of his deliberate indifference claims against Detention Specialist DeHerrera and Deputy Rabie.  (ECF No. 86 at 11.) Specifically, he alleged that he fell in his cell and permanently injured his lower back, was immobilized by the fall, and soiled himself because of the pain and his inability to move.  (*Id*.)  Detention Specialist DeHerrera, who was the ACDF official tasked with alerting floor deputies when detainees press the emergency distress button, allegedly ignored Plaintiff's emergency distress calls because chasing buttons was not worth his or his unit's time.  (*Id*.)  As a result, Plaintiff was further injured when his cellmate tried

to help move him and his suffering was prolonged.  (*Id.*)

The Magistrate Judge found that Plaintiff plausibly alleged that Detention Specialist DeHerrera's ignoring his emergency distress calls caused him substantial harm, thus satisfying the objective prong.  (*Id.* at 12.)  Further, she found that Plaintiff satisfied the subjective prong by alleging that Detention Specialist DeHerrera received the distress calls from Plaintiff's cell but made no attempt to determine the severity of his medical need.  (*Id.*)  Despite Detention Specialist DeHerrera's argument that he cannot be liable because he did not have the requisite personal participation under § 1983, the Magistrate Judge concluded that the act or *omission* of failing to relay Plaintiff's distress calls was sufficient to demonstrate personal participation.  (*Id.* at 12–13.)

With respect to Deputy Rabie, the Magistrate Judge found that Plaintiff's allegations that Deputy Rabie's actions of finding Plaintiff in a contorted position and in extreme pain and telling Plaintiff to "file a grievance" and walking away satisfied the requirements for deliberate indifference.  (*Id.* at 13.)  She found that these alleged inactions prolonged Plaintiff's suffering and delayed Plaintiff visiting with medical personnel; moreover, the allegation that Deputy Rabie saw Plaintiff and spoke to him were sufficient to reflect a culpable state of mind.  (*Id.*)

Regarding the second element of qualified immunity—whether the law was clearly established—the Magistrate Judge determined that in this case, general statements of the law apply to Defendants' conduct.  (*Id.* at 14–16.)  In sum, the Magistrate Judge recommended that at this stage of the litigation, the Court should find that Detention Specialist DeHerrera and Deputy Rabie are not entitled to qualified

immunity.  (*Id.* at 16.)

### C.     Deputy Overmyer's Motion to Dismiss

First, the Magistrate Judge recommended dismissing Plaintiff's two official capacity claims against Deputy Overmyer because the claims against Sheriff Claps will proceed.  (*Id.*)

Next, she recommended dismissing Plaintiff's Title II claim against Deputy Overmyer because Title II of the ADA does not provide for individual liability.  (*Id.* (citing 42 U.S.C. § 12132 (providing disabled individuals redress for discrimination by a "public entity")).)

With respect to Plaintiff's deliberate indifference claim, the Magistrate Judge found Plaintiff's allegations to be sufficient.  (*Id.* at 17.)  Specifically, she noted that Plaintiff alleged that Deputy Overmyer caused the fall that permanently injured his back because she was responsible for the facility's accommodations, and she knew of and disregarded a high and obvious risk of harm in the non-wheelchair-accessible cell.  (*Id.*) Additionally, the Magistrate Judge emphasized Plaintiff's repeated allegations that Deputy Overmyer knew Plaintiff faced a serious and obvious risk of harm and chose to disregard that risk.  (*Id.*)  Finally, the Magistrate Judge rejected Deputy Overmyer's argument that an intervening cause—the other deputies' failure to timely respond to Plaintiff's emergency distress call—as undermining the sufficiency of Plaintiff's claim. (*Id.* at 18.)  The Magistrate Judge concluded that Deputy Overmyer mischaracterized Plaintiff's claim, which is not that Deputy Overmyer is responsible for the delay in care of the injuries resulting from the delay, but that she is responsible for the fall itself.

Finally, the Magistrate Judge rejected Deputy Overmyer's argument that she is entitled to qualified immunity because her argument was inadequately presented.  (*Id.*

at 18–19.)

**D.    Sheriff Reigenborn's Motion to Dismiss Personal Capacity Claims**

Sheriff Reigenborn moves to dismiss all four of Plaintiff's claims against him in his personal capacity. (*Id.* at 19.)  First, he argues that he is entitled to qualified immunity on Plaintiff's deliberate indifference and retaliation claims. (*Id.*)  Second, he argues that Plaintiff fails to state an ADA or excessive force claim against him.

 1.    <u>Qualified Immunity</u>

The Magistrate Judge rejected Sheriff Reigenborn's qualified immunity argument at this stage of the litigation, noting that it appears as though he is arguing under the clearly established prong. (*Id.*)  In recommending denying the motion on this point, the Magistrate Judge underscored that Sheriff Reigenborn missed the mark by focusing on modification of security classifications to accommodate an inmate, but that is "only one aspect of Plaintiff's many claims against Sheriff Reigenborn." (*Id.*)  In addition, Plaintiff alleges misconduct concerning (1) his failure to properly train ACDF's ADA coordinator, (2) his role in allegedly approving ACDF staff's policy of not responding to emergency distress buttons, (3) his role in failing to discipline or investigate ACDF staff for violating detainees' rights, and (4) his role in approving a broad range of harsh adjustments to Plaintiff's living conditions in retaliation for Plaintiff's filing a well-known lawsuit against ACDF. (*Id.* (citing ECF No. 55 at ¶¶ 37, 40–46, 48–51, 78–79, 85).)  Accordingly, the Magistrate Judge rejected Sheriff Reigenborn's qualified immunity argument, stating that he "has not adequately raised a qualified immunity defense at this stage." (*Id.* at 20.)

 2.    <u>Rule 12(b)(6) Arguments</u>

First, the Magistrate Judge recommended dismissing Plaintiff's Title II claim

against Sheriff Reigenborn in his personal capacity because Title II of the ADA does not provide for individual liability.  (*Id.*)

    With respect to Plaintiff's excessive force claim, Sheriff Reigenborn argued that it should be dismissed because Plaintiff failed to allege he had prior knowledge that the deputies would beat Plaintiff in the manner that they did.  (*Id.*)  Although the Magistrate Judge emphasized that this argument fails because there is no requirement that Plaintiff demonstrate such precise knowledge, she concluded that all Plaintiff alleges is a conclusory failure to train or supervise on Sheriff Reigenborn's part.  (*Id.*)  In particular, Plaintiff alleges that his injuries stem from former Sheriff Reigenborn's policy and practice of directing his deputies to use excessive force against non-combative inmates and having his staff deny medical care to injured detainees to prevent medical documentation of his deputies' unlawful conduct, all in order to escape liability for their misconduct.  (*Id.*)

    However, the Magistrate Judge noted that "Plaintiff does not allege any specific instances where Sherriff Reigenborn 'encouraged his deputies' to violate civil rights; nor does Plaintiff point to any comments or statements—by Sheriff Reigenborn or anyone else—reflecting Sheriff Reigenborn's personal participation in the creation or implementation of a policy, practice, or training."  (*Id.*)  Ultimately, she found that Plaintiff failed to sufficiently allege facts showing that Sheriff Reigenborn fostered a problematic culture, encouraged deputies to violate civil rights, and failed to discipline deputies when appropriate, and recommended dismissing without prejudice the personal capacity excessive force claim against Sheriff Reigenborn.  (*Id.* at 21.)

    While the Magistrate Judge disagreed with Sheriff Reigenborn's articulation of

the standard, which he apparently argues requires direct personal participation, she agreed that Plaintiff nevertheless must allege an "'affirmative link' . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.'" (*Id.* at 22 (citation omitted).) Because the allegations supporting that link were too conclusory, she recommended dismissal without prejudice with respect to the personal capacity excessive force claim. (*Id.*)

The Magistrate Judge noted that the "lack of specific facts alleging a link between Sheriff Reigenborn and the incident at issue may be fatal to Plaintiff's deliberate indifference and retaliation claims as well." (*Id.* at 22 n.11.)  However, because she determined that Sheriff Reigenborn did "not challenge the deliberate indifference and retaliation claims on these grounds, and relied instead on an underdeveloped 'clearly established law' argument," she did not analyze those claims in that context. (*Id.*)

### III. LEGAL STANDARDS

**A.     Rule 72(b) Review of a Magistrate Judge's Recommendation**

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." Fed. R. Civ. P. 73(b)(3).  An objection to a recommendation is properly made if it is both timely and specific. *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.*  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to

the magistrate judge with instructions."  *Id.*

In the absence of a timely and specific objection, "the district court may review a magistrate [judge's] report under any standard it deems appropriate."  *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record.").

## B.  Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## C.  Qualified Immunity

"Qualified immunity shields federal and state officials from money damages

unless a plaintiff pleads facts showing (1) that the official violated a statutory or
constitutional right, and (2) that the right was 'clearly established' at the time of the
challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  "The judges of the
district courts . . . [may] exercise their sound discretion in deciding which of the two
prongs of the qualified immunity analysis should be addressed first in light of the
circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236
(2009).

Once the qualified immunity defense is raised, the burden shifts to the plaintiff to
demonstrate that the law was clearly established at the relevant time.  *Thomas v.
Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).  "A right is clearly established in this
circuit when a Supreme Court or Tenth Circuit decision is on point, or if the clearly
established weight of authority from other courts shows that the right must be as the
plaintiff maintains."  *Id.* (internal quotation marks omitted).  Nonetheless, the clearly
established prong

> involves more than a scavenger hunt for prior cases with
> precisely the same facts.  The more obviously egregious the
> conduct in light of prevailing constitutional principles, the less
> specificity is required from prior case law to clearly establish
> the violation.  The Supreme Court has cautioned [lower]
> courts not to define clearly established law at a high level of
> generality, but to focus on whether the violative nature of
> particular conduct is clearly established.

*Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) (internal quotation marks and
citations omitted).

# IV. ANALYSIS

**A.     Rabie/Claps Objections**

     1.    <u>Deputy Rabie's Objections</u>

Deputy Rabie objects to all of the Magistrate Judge's recommendations with respect to the claim against him.  (ECF No. 88 at 3.)

     a.    *Deliberate Indifference*

With respect to the objective component of deliberate indifference, Deputy Rabie argues that Plaintiff's allegations do not support that he was suffering from a condition at the time that Deputy Rabie encountered him that mandated immediate medical treatment.  (*Id.*)  He argues that Plaintiff failed to allege facts demonstrating that Deputy Rabie would have been able to recognize that Plaintiff's "contorted" position was anything other than normal; Deputy Rabie was familiar with Plaintiff such that he had a basis to believe that Plaintiff's position in the wheelchair was abnormal; or Plaintiff was in extreme pain or was injured in some way.  (*Id.* at 4–5.)  With respect to the subjective component, Deputy Rabie argues that Plaintiff's allegations fail to establish a substantial risk of harm or how Deputy Rabie would have known Plaintiff was subject to a substantial risk of harm.  (*Id.* at 6.)  He takes issue with the conclusions in the Recommendation that the subjective prong was met merely because he saw and spoke to Plaintiff.  (*Id.*)

Despite Deputy Rabie's arguments, the Court agrees with the Magistrate Judge that at this time, Plaintiff has sufficiently alleged a deliberate indifference claim against Deputy Rabie.  Plaintiff has alleged that Deputy Rabie saw him in a contorted position and in extreme pain, that Plaintiff told Deputy Rabie he had fallen from his wheelchair, and there was a medical emergency.  (ECF No. 55 ¶ 31.)  Allegedly, Deputy Rabie told

Plaintiff to file a grievance and walked away.  (*Id.*)  The objective prong of Plaintiff's deliberate indifference claim is satisfied by the alleged delay in medical care which would not have occurred had Deputy Rabie ordered medical aid for Plaintiff immediately.  The subjective prong is satisfied by the allegation that Plaintiff was in a contorted position and verbally told Deputy Rabie that a "medical emergency" had occurred.

Accordingly, the Court overrules Deputy Rabie's objections on this point and adopts the findings of the Magistrate Judge in the Recommendation.  The Court proceeds to examine whether Deputy Rabie is nonetheless entitled to qualified immunity.

          b.    *Qualified Immunity*

Deputy Rabie argues that Plaintiff failed to meet the clearly established requirement of the qualified immunity analysis.  (ECF No. 88 at 7.)  He points out that it is Plaintiff's burden to identify a case where an official acting under sufficiently similar circumstances was held to have violated a claimant's rights.  (*Id.* at 7–8.)  He argues that Plaintiff fails to cite applicable case law setting forth clearly established precedent that his conduct was constitutionally violative and that the Magistrate Judge's reliance on and citation to general statements of law related to deliberate indifference to a serious medical need are insufficient.  (*Id.* at 8.)

The Court disagrees.  Plaintiff cited numerous published Tenth Circuit cases in his response brief, which the Magistrate Judge also cited, to support his argument that the law is clearly established.  (ECF No. 82 at 18.)  Although the Court will not reiterate the cases here, the Court agrees with the Magistrate Judge's conclusion that with respect to this claim against this defendant, general statements of law demonstrate that

the law is clearly established.  (*See* ECF No. 82 at 20–23; ECF No. 86 at 15.)  Simply because Plaintiff ostensibly does not cite a case in which a detainee fell out of a wheelchair in a non-wheelchair accessible cell and injured himself and requested medical aid does not mean that the law was not clearly established.  Where a detainee has a serious and obvious medical need, ignoring those needs as Deputy Rabie allegedly did by physically observing Plaintiff, telling him to file a grievance, and walking away meets the clearly established standards set in this Circuit.

Thus, the Court overrules Deputy Rabie's objections on this matter and adopts this portion of the Recommendation concluding that Deputy Rabie is not entitled to qualified immunity.  Deputy Rabie's motion to dismiss the deliberate indifference claim against him in his individual capacity is denied.  Plaintiff's claim for deliberate indifference against Deputy Rabie in his individual capacity will proceed.

### 2. Sheriff Claps's Objections

Sheriff Claps objects to the Recommendation's analysis of his Eleventh Amendment immunity argument.  (ECF No. 88 at 8–10.)  He notes that Plaintiff merely argued in his response that Eleventh Amendment immunity had been waived—an argument rejected by the Tenth Circuit.  (*Id.* at 9.)  Further, he contends that it is of no moment that he did not explicitly mention the four factors used to analyze Eleventh Amendment immunity and takes issue with the Magistrate Judge's analysis of assertions not raised by Plaintiff.  (*Id.*)  The Court reviews the arguments concerning claims against Sheriff Claps in his official capacity *de novo*.

#### a. *Official Capacity Claims*

Among other defendants, Plaintiff has sued Sheriff Claps in his official capacity

and Adams County.[6]  (*See* ECF No. 55.)  As such, in Sheriff Claps's motion to dismiss, he argues that "he is only properly named in his personal capacity" because "[o]fficial capacity claims are pass through claims."  (ECF No. 35 at 9.)

The Court agrees.  "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Couser v. Gay*, 959 F.3d 1018, 1023 (10th Cir. 2020) (recognizing that official capacity suits "impose[ ] liability on the entity that [the sued public servant] represents" (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).  Because Plaintiff has sued Adams County, a suit against Sheriff Claps in his official capacity is duplicative.

Because of the duplicative nature of the claims against Sheriff Claps, the Court rejects the Recommendation's findings with respect to Sheriff Claps, grants Sheriff Claps's motion to dismiss the official capacity claims, and dismisses all of Plaintiff's claims against Sheriff Claps in his official capacity with prejudice.  *See Rustgi v. Reams*, 536 F. Supp. 3d 802, 822 (D. Colo. 2021) (dismissing official capacity claims against sheriff in light of claims against the Weld County Board of County Commissioners).

b.      *Eleventh Amendment Immunity*

Despite the Court's foregoing ruling, the Court is cognizant of the fact that Sheriff Claps's primary argument is that Plaintiff's claims against him are barred by the Eleventh Amendment.  Therefore, "[b]ecause the proper application of Eleventh Amendment immunity deprives a federal court of jurisdiction, *see, e.g.*, *Peterson v.*

---

[6] In his response to Sheriff Claps's motion to dismiss, Plaintiff states that he "would be amenable to amending his claims in a manner in which only one, rather than two, of the institutional iterations remained a party (*i.e.*, naming Sheriff Reigenborn [now Sheriff Claps] in his official capacity)."  (ECF No. 52 at 16.)  He further states that "to the extent this Court may be inclined to dismiss any claims solely because they duplicate other claims, Adams County should remain as the Defendant subject to *Monell* liability."  (*Id.*)

*Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) ("The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state."), the Court considers this argument in the alternative.  *See Reynolds v. Flynn*, 2022 WL 252327, at *4 (D. Colo. Jan. 27, 2022) (rejecting sheriff's assertion of Eleventh Amendment immunity), *report and recommendation adopted*, 2022 WL 20538911 (D. Colo. Mar. 31, 2022).

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "The Eleventh Amendment precludes anyone from suing an arm of the state or asserting a damage claim against state officers in their official capacities."  *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017).  This immunity extends to suits by citizens against their own state or its agencies in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  The Eleventh Amendment thus bars suits against state officials sued in their official capacities for monetary damages pursuant to § 1983. *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (stating that § 1983 "does not abrogate a state's sovereign immunity").

Here, Plaintiff sues Sheriff Claps in his official capacity.  "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works."  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).  Thus, a suit against Sheriff Claps in his official capacity is the equivalent of a suit against Adams County.  *See Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015)

(finding that a suit against a sheriff was in fact a suit against the county for which the sheriff worked).

"The Supreme Court 'has repeatedly refused to extend Eleventh Amendment sovereign immunity to counties.'"  *Couser v. Gay*, 959 F.3d 1018, 1023 (10th Cir. 2020) (quoting *Northern Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006)).  "It follows that county officers sued for damages in their official capacity are generally not entitled to Eleventh Amendment immunity."  *Id*.

The Tenth Circuit looks to "four primary factors" to determine whether an entity constitutes an "arm of the state."  *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007).  The Court considers (1) the "character ascribed to the entity under state law;" (2) the "autonomy accorded the entity under state law," or the degree of control the state exercises over the entity; (3) the entity's finances, *i.e.*, "the amount of state funding the entity receives and . . . whether the entity has the ability to issue bonds or levy taxes on its own behalf;" and (4) "whether the entity in question is concerned primarily with local or state affairs," examining the agency's function, composition, and purpose.  *Id*.  The weight of authority finds that the defendant bears the burden of demonstrating that he is entitled to Eleventh Amendment immunity.  *Reynolds*, 2022 WL 252327, at *6 (collecting persuasive authority).

Sheriff Claps broadly discusses Eleventh Amendment immunity in his motion to dismiss and unhelpfully does not explicitly tie his assertions to any particular *Steadfast* factor; it appears as though some assertions apply to multiple factors.  Nevertheless, the Court evaluates his arguments.

Sheriff Claps states:

- "[C]ounty sheriffs in Colorado are independently-elected state constitutional officers with jurisdictional limits tied to a geographic boundary.  As such, they serve in a variety of roles."  *See Struble v. Barger*, 261 P.2d 497, 498 (Colo. 1953) (referring to the office of the county sheriff serving as both an "executive officer" and an "officer of the court")).

- Under the Colorado Constitution, law enforcement is executive in nature.  *See* Colo. Const., art. IV, § 2 (granting to Governor "supreme executive power of the state" and imposing duty to "take care that the laws be faithfully executed").

- The State has the power of incarceration as part of its police powers.  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

- The State delegates that power to county sheriffs in each jurisdiction by statute.

- The County, for its part, exercises no control over the Sheriff in the operation of detention facility.

- By statute, the Sheriff's finances are derived from a variety of federal and state grants, county tax revenue, and fees for services provided.  *See, e.g.*, Colo. Rev. Stat. §§ 30-10-102(1); 30-10-521.

(ECF No. 35 at 13–14.)  Given the foregoing statements, Sheriff Claps argues he is entitled to Eleventh Amendment immunity.

The Court disagrees.  Perhaps most importantly, Sheriff Claps does not clearly acknowledge the fundamental fact that the Colorado Constitution classifies sheriffs as "[c]ounty officers."[7]  *See* Colo. Const. art. XIV, § 8; *see also* Colo. Const. art. IV, § 1(1) (recognizing that the executive department constitutes the governor, lieutenant governor, secretary of state, state treasurer, and attorney general); *see also Couser*, 959 F.3d at 1026 (in finding that county sheriffs were county, rather than state, actors,

---

[7] Notably, Adams County cites this portion of the Colorado Constitution in another section of the same brief.  (ECF No. 35 at 6.)

noting that the Kansas Constitution did not recognize sheriffs as state officers and a Kansas statute recognized sheriffs as county officers).  Therefore, the first factor weighs heavily against finding Eleventh Amendment immunity applies.

In the Court's view, Sheriff Claps's arguments collapse the second and fourth factors.  However, he merely recites broad propositions—often statutory provisions—that do not help the Court evaluate the true amount of autonomy Sheriff Claps enjoys or whether he is concerned primarily with state or local affairs.  Therefore, based on these arguments, the Court cannot find that these factors weigh in favor of finding Eleventh Amendment immunity applies here.

Finally, with respect to the finances factor, Sheriff Claps broadly states that his finances are derived from a "variety of federal and state grants, county tax revenue, and fees for services provided."  (ECF No. 35 at 14.)  This statement does almost nothing to help the Court understand the entity's finances, *i.e.*, the amount of state funding the entity receives and whether the entity has the ability to issue bonds or levy taxes on its own behalf.  Accordingly, the Court cannot find that the third factor weighs in favor of finding Eleventh Amendment immunity here.

While the Court has reviewed the Eleventh Amendment immunity argument *de novo*, it agrees with the point in the Recommendation that Sheriff Claps "points to no comparable Colorado statute or case holding a Colorado sheriff immune under the Eleventh Amendment."  (ECF No. 86 at 10.)  Of course, as Sheriff Claps emphasizes in his objections, the "existence of a prior precedent already reaching that outcome . . . is not the test under . . . *Couser*."  (ECF No. 88 at 10.)  Nevertheless, the dearth of case law supporting Sheriff Claps's argument, while not dispositive, is nevertheless

significant.

Therefore, in the alternative, the Court overrules Sheriff Claps's objections to the Recommendation's analysis of Eleventh Amendment immunity, adopts as modified the Recommendation's findings with respect to Sheriff Claps not being entitled to Eleventh Amendment immunity, and denies Sheriff Claps's motion to dismiss the official capacity claims on the basis that he is entitled to Eleventh Amendment immunity.  Of course, given the Court's foregoing dismissal of all official capacity claims against Sheriff Claps, this ruling is of no practical effect and is made purely in the alternative to address a jurisdictional question.

**B.      Adams County Objections**

                1.      <u>Adams County Moved to Dismiss All Four Claims Alleged Against It</u>

In the Recommendation, the Magistrate Judge states that "Adams County nowhere appears to argue Plaintiff's first and fourth claims against it should be dismissed."  (ECF No. 86 at 8 n.4.)  But Adams County objects that it did not "limit the force of its argument to Mr. Hardy's second and third claims[.]"  (ECF No. 89 at 3.)  Adams County explains that due to space constraints imposed by Local Rule of Practice–Civil VII.B, it "focused on the obligations of the ADA as the only potentially relevant statutory scheme in which it might (but didn't) have additional obligations due to the age of the detention facility."[8]  (*Id.*)

The Court observes that in the Conclusion of the motion to dismiss, the parties argue that "Mr. Hardy's claims against Adams County . . . should be dismissed with prejudice" and do not limit their argument to only two of the four claims.  (ECF No. 35 at

_____

[8] *See infra*, n.12 for discussion of "space constraints."

17.)  Thus, the Court sustains Adams County's objection that the Magistrate Judge should have considered the motion to dismiss as applying to all four of the claims against Adams County, and to the extent required, rejects the conclusion in the Recommendation that Adams County only moved for dismissal with respect to Plaintiff's second and third claims.

2.      Title II ADA Claim

Adams County objects that the Magistrate Judge "did not address the applicability of the ADA in light of the age of the detention facility."  (ECF No. 89 at 4.) Moreover, Adams County argues that it cannot be held liable under the ADA because the detention facility predates the 1993 applicability date of the ADA, which "does not, therefore, require the form of absolute wheelchair accessibility accommodation demanded by Mr. Hardy in Counts 2 and 3."  (*Id.*)  In its motion to dismiss, Adams County explains:

> In enacting the ADA, Congress adopted two distinct systems for regulating building accessibility: one to apply to existing facilities (those designed and constructed for occupancy before January 26, 1993) and another to apply to later-constructed facilities.  42 U.S.C. §§ 12183(a)(1) and 12182(b)(2)(A)(iv).  Pre-1993 facilities must remove barriers to accessibility only to the extent that such removal is "readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv). "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).

(ECF No. 35 at 6.)  Thus, Adams County contends that the ADA does not require it to modify detention facilities that predate 1993.  (*Id.*)  In the Adams County Objections, Adams County argues that to the extent the Recommendation with respect to Claims 2 and 3 are predicated on § 1983 instead, that section "cannot provide an alternative source of accessibility rights unless those rights are constitutional."  (ECF No. 89 at 4.)

The Court agrees that Plaintiff's Claim 3, whatever it alleges, must be dismissed. Plaintiff confusingly explains that "Claim three is a [§] 1983 Fourteenth  Amendment claim of discrimination against the Plaintiff as a member of the class based group of "Americans with Disabilities[.]"  (ECF No. 52 at 11–12.)  But "[s]ection 1983 cannot be used to vindicate a violation of federal law where Congress has otherwise created an incompatible and comprehensive enforcement scheme."  *Brown v. Berthoud Fire Prot. Dist.*, 2013 WL 6152407, at *4 (D. Colo. Nov. 22, 2013) (citing *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)).  "To the extent that the Plaintiff seeks to invoke the ADA in this § 1983 claim, that claim fails, because ADA claims are 'not actionable under Section 1983.'"  *Laface v. E. Suffolk BOCES*, 2020 WL 2489774, at *9 (E.D.N.Y. May 14, 2020) (citation omitted).  Such is the case here.  To the extent Plaintiff alleged a hybrid ADA/§ 1983 claim, the law does not permit such a claim.  This is the first basis upon which Claim 3 must be dismissed.

But there is another, perhaps more significant, reason to dismiss Claim 3. Adams County states that the detention facility predates the applicability of the ADA. (ECF No. 64 at 8.)  Plaintiff does not argue otherwise in his response.  (*See* ECF No. 52.)  Further, Adams County states that architectural or structural changes are not readily achievable under the ADA's applicable standard where they are not easily accomplishable and able to be carried out without much difficulty or expense.  (*See* ECF No. 35 at 8.)  It highlights that Plaintiff does not allege otherwise; rather, Plaintiff acknowledges in a previous complaint that the bulk of the detention facility predates the ADA with the exception of F-block, which Plaintiff alleges is ADA compliant.[9]  (*See id.*)

---

[9] The allegations cited appear in Plaintiff's Amended Prisoner Complaint, which is not the operative complaint.  (ECF No. 22.)

For this reason the Court finds that Plaintiff has failed to state a Title II ADA claim.  Accordingly, the Court rejects that portion of the Recommendation which recommends that the Title II ADA claim against Adams County proceed and sustains Adams County's objection on this point.  The Court grants Adams County's motion to dismiss Claim 3 and dismisses Claim 3 without prejudice.

### 3.    Section 1983 Claims

Adams County also objects to the Recommendation on the grounds that it is inconsistent with other case law involving inmate claims under § 1983 asserted against a county; its invocation of Adams County's duty to inspect the detention facility is misplaced; its reliance on the undersigned's decision in *Chavez v. Bd. of Cnty. Comm'rs*, 426 F. Supp. 3d 802, 812 (D. Colo. 2019), is unwarranted; and it improperly relies on a pre-*Twombly/Iqbal* pleading decision.  (*See* ECF No. 89.)

The Court has considered all of these objections and concludes that they are without merit.  At bottom, Adams County objects to the Magistrate Judge's rejection of its argument that it is "not the proper party in interest because the Sheriff has exclusive power to set policy within the detention facility[,] and Adams county lacks control over those policies."  (ECF No. 86 at 7; ECF No. 89.)  Instead, it argues that Sheriff Claps "is the real proper party in interest when it comes to the operation of the detention facility." (ECF No. 35 at 7.)  However, while Adams County argues that Plaintiff's claims properly lie against Sheriff Claps, Sheriff Claps simultaneously argues that Adams County is the proper party because official capacity claims against him are merely "pass through claims" *and* that regardless, he is entitled to Eleventh Amendment immunity.  (ECF No. 35 at 9–10, 13–15.)

Another judge in this District faced a very similar argument (albeit in the context

of claims related to employment decisions), brought by the same attorneys litigating this action for Defendants, and succinctly stated that "[t]hus, according to Defendants, *no* governmental entity would be liable under Section 1983 when a Colorado Sheriff violates an employee's constitutional rights through an unlawful employment action." *Coates v. Adams Cnty. Sheriff's Off.*, 631 F. Supp. 3d 976, 997 (D. Colo. 2022), *appeal dismissed sub nom. Coates v. Reigenborn*, 2023 WL 6810961 (10th Cir. Oct. 16, 2023) (emphasis added).  Were the Court to adopt Adams County and Sheriff Claps's substantially similar reasoning here, the same unacceptable legal loophole would befall Plaintiff.

"As a general rule, 'municipalities and municipal entities . . . are not liable under 42 U.S.C. § 1983 solely because their employees inflict injury on a plaintiff.'" *Id.* (citing *Fofana v. Jefferson Cnty. Sheriff's [Office]*, 2011 WL 780965, at *2 (D. Colo. Feb. 28, 2011); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694, (1978); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).  "Instead, 'they are responsible only for their own actions.'" *Id.* (quoting *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007)).  "Nonetheless, an action may be attributed to a municipality or municipal entity when: 1) the action was taken in compliance with a longstanding policy or custom; or 2) the action was taken by the municipality's final policymakers." *Id*. (citation omitted).

"In determining whether an official has final policymaking authority, [the Court] look[s] to state and local law."  *Jackson v. City & Cnty. of Denver*, 2022 WL 120986, at *4 (10th Cir. Jan. 13, 2022) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).  Adams County points out that the "Sheriff has exclusive statutory powers as

keeper of the jail."  (ECF No. 35 at 7 (citing Colo. Rev. Stat. §§ 17-26-101 to 103; *id.* at

§ 30-10-511 ("[T]he sheriff shall have charge and custody of the jails of the county, and

of the prisoners in the jails, and shall supervise them himself or herself through a deputy

or jailer.")).)  Further, Adams County states that the "Board is not responsible for, nor

can it control, the Sheriff's policies and practices within the detention facility."  (*Id.*)  It

further points out that

> [a]s such, the County (or the Board) is not the real-party-in-
> interest as to the Sheriff's policies within the detention facility
> or his hiring, training, or supervision of deputies.  *See Lewis
> v. Clarke*, 581 U.S. 155, 162 (2017) (proper affiliation of
> state employees or entities is determined by looking to "the
> real party in interest").  Because the Sheriff is not an agent of
> the County for purposes of the operation of the detention
> facility, a *Monell* claim does not lie against the County for the
> Sheriff's conduct—whether directly or through an "official
> capacity" claim against the Sheriff.  The Sheriff is the real
> party in interest when it comes to the operation of the
> detention facility.  The Sheriff (and his successors) would be
> bound by any holding and their statutory powers thereby
> limited.  The fact the County may have an indirect or
> secondary indemnification duty under a state statute does
> not alter the analysis.

(*Id.* at 7–8.)  Thus, the parties—Adams County and Sheriff Claps, to be precise—do not

dispute that Sheriff Claps was the final policymaker with respect to policies at the

detention facility.

The Court again finds the *Coates* court's summary of a nearly identical situation

instructive here.  In *Coates*, the court observed that

> the defendants appear to argue both that the County cannot
> be liable for Sheriff Reigenborn's actions because Sheriff
> Reigenborn is not under the County's control and therefore
> his actions cannot be imputed to the County, and that ACSO
> cannot be sued separately because it is simply an office or
> department within the County with no separate legal entity.

*Coates*, 631 F. Supp. 3d at 997.  Such is precisely the case here.  And, like the *Coates* court, the undersigned finds this position wholly "untenable."  *Id.*  The Court need not parse the difference between a county, a sheriff, and a sheriff's office like the *Coates* court did because here, Plaintiff only sues the county and the sheriff.  *See id.* at 997–98. Nevertheless, the Court agrees with the *Coates* court that despite some confusion concerning proper municipal liability defendants in this District, "none have allowed the type of municipal-liability loophole that Defendants seek to create here.  Such a result would unfairly punish Plaintiff[] for the legal uncertainty, despite [his] viable municipal liability claims."  *Id.* at 998.

Despite the foregoing procedural conundrum, the Court holds that Adams County is the proper municipal defendant, and Plaintiff properly brought his claims against it by naming it and Sheriff Claps in his official capacity.[10]  Although Adams County argues that it cannot be held liable for Sheriff Claps's decisions and policies with respect to the detention facility because it does not control those decisions, as in *Coates*, this simply means that Sheriff Claps is the final policymaker on such matters for Adams County and his decisions are thus chargeable as an official act of Adams County.  *See id.*

Therefore, the Court overrules in part Adams County's Objections and adopts as modified the relevant portion of the Recommendation.  Adams County's motion to dismiss Plaintiff's § 1983 claims for excessive force, deliberate indifference, and retaliation is denied.

---

[10] Earlier in this Order, the Court addressed the duplicative nature of the claims against Sheriff Claps and dismissed the claims against him.  *See supra*, Part IV.A.2.

C.      **Reigenborn/DeHerrera/Overmyer Objections**

       1.      <u>Sheriff Reigenborn</u>

           a.      *Excessive Force*

With respect to Plaintiff's excessive force claim against Sheriff Reigenborn, the Magistrate Judge recommended dismissal without prejudice.  (ECF No. 86 at 22.)  No party has objected to that portion of the Recommendation.[11]  (ECF No. 90 at 6.)

Finding no clear error, the Court adopts this portion of the Recommendation. Sheriff Reigenborn's motion to dismiss Plaintiff's excessive force claim is granted, and Plaintiff's excessive force claim against Sheriff Reigenborn in his individual capacity is dismissed without prejudice.

           b.      *Qualified Immunity Regarding Deliberate Indifference and Retaliation Claims*

Sheriff Reigenborn objects to the Magistrate Judge's qualified immunity analysis, arguing that it was "erroneous" for multiple reasons, including that the Magistrate Judge improperly shifted the burden to show that the constitutional right was clearly established from the plaintiff to the defendant; relied on case law, *Tillmon v. Cty. of Douglas*, 2019 WL 1375678, at *12 (D. Colo. Mar. 27, 2019), that is not binding or relevant; and constrained defendants' argument by requiring compliance with certain page limits in the practice standards.[12]  (ECF No. 90 at 4–6.)

---

[11] Sheriff Reigenborn objected that he was "entitled to qualified immunity on the claims not otherwise recommended for dismissal" and points out he asserted qualified immunity as to claims two and four, which are Plaintiff's deliberate indifference and retaliation claims.  (ECF No. 90 at 3.)

[12] The Reigenborn/DeHerrera/Overmyer Objections assert that they were "constrained by their compliance with an atypical local practice standard" that "requires all parties represented by the same counsel to file a consolidated motion subject to a single page limit." (ECF No. 90 at 5.)  To the extent *any* defendant bases an objection on the Magistrate Judge's Civil Practice Standard that states: "Absent a sufficient legal reason and leave of Court, all

While the Court disagrees with the second and third arguments that Sheriff Reigenborn raises, it agrees that the Recommendation improperly shifted the burden on the qualified immunity issue from Plaintiff to Sheriff Reigenborn.  (ECF No. 86 at 19.) Although the Recommendation addresses Sheriff Reigenborn's arguments concerning whether the constitutional right was clearly established, it is silent with respect to whether *Plaintiff* met his burden to show that Sheriff Reigenborn is not entitled to qualified immunity and improperly states that "Defendant has not adequately raised a qualified immunity defense at this stage."  (*Id.* at 20.)  The Recommendation merely cites portions of Plaintiff's SAC but does not address whether he adequately refuted Sheriff Reigenborn's argument that the constitutional rights at issue were not clearly established.  Therefore, the Court sustains the former Sheriff's objection regarding the qualified immunity analysis, rejects that portion of the Recommendation analyzing the clearly established prong of the qualified immunity analysis, and addresses it *de novo* below.

In Plaintiff's response brief, he cites three published Tenth Circuit cases to support his argument that Sheriff Reigenborn is not entitled to qualified immunity on his second and fourth claims.  (ECF No. 52 at 23–24.)  First, he cites *Dodds v. Richardson*,

---

parties represented by the same counsel are limited to a consolidated motion that adheres to the applicable page limits," *see* Prac. Std. VII.B, the Court finds such an argument is without merit.  Notwithstanding a particular judge's practice standards, a party is free to file a motion to extend the page limits or even to file a separate (non-consolidated) motion, as the case may require.

The Reigenborn/DeHerrera/Overmyer Objections do not indicate that counsel filed such a motion to extend the page limits or file separate motions.  In a case like this one, with multiple claims, a *pro se* plaintiff, multiple defendants sued in their official and individual capacities, and complex legal doctrines, it is very likely that the Court would grant such a request, at least to some extent.  Unless a party so moves and finds his request rejected, the Court finds such an argument baseless.

614 F.3d 1185, 1206 (10th Cir. 2010), which found that "Plaintiff's right to be free from unjustified detention after his bail was set was clearly established such that a reasonable official in Defendant's position in April 2007 would have understood that his deliberately indifferent maintenance of the policies that prevented arrestees from posting preset bail for no legitimate reason violated the Constitution."  Second, he cites *Wilson v. Montano*, 715 F.3d 847, 856 (10th Cir. 2013), which concerned whether the plaintiff received a prompt probable cause hearing, to support the proposition that there has been no repudiation of *Dodds* in the Tenth Circuit.  Third, Plaintiff cites *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988), which involved allegations of excessive force and inadequate medical care.

Upon *de novo* review, the Court concludes that Plaintiff has failed to meet his burden to demonstrate that Sheriff Reigenborn is not entitled to qualified immunity on the deliberate indifference and retaliation claims.  None of the three aforementioned cases are even remotely factually similar to the allegations here.  As Sheriff Reigenborn emphasizes, none of these cases "involve security classifications or cell accommodation requests based on alleged disability status under Title II of the ADA."[13] (ECF No. 64 at 6–7.)  None address First Amendment retaliation.  Further, only *Meade* involves medical care, but it does not involve similar facts related to the timeliness of a response to an emergency call button, nor does it establish an employer or

_____

[13] The Recommendation underlines that these are only some of the aspects of Plaintiff's claims, which also involve "(1) his failure to properly train ACDF's ADA coordinator, (2) his role in allegedly approving ACDF staff's policy of not responding to emergency distress buttons, (3) his role in failing to discipline or investigate ACDF staff for violating detainees' rights, and (4) his role in approving a broad range of harsh adjustments to Plaintiff's living conditions in retaliation for Plaintiff's filing a well-known lawsuit against ACDF." (ECF No. 86 at 19–20 (citing ECF No. 55 at ¶¶ 37, 40–46, 48–51, 78–79, 85).)  While the Court agrees that these are also aspects of Sheriff Reigenborn's alleged misconduct, the cases Plaintiff cites nevertheless do not involve facts that would support his argument.

policymaker's standard of care for supervision and training as to distress call responsiveness.  (*Id.* at 7.)

Therefore, the Court finds that Plaintiff has not met his burden to demonstrate that Sheriff Reigenborn is not entitled to qualified immunity on his second and fourth claims.  The Court rejects this portion of the Recommendation with respect to qualified immunity and sustains Sheriff Reigenborn's objection.  The Court grants Sheriff Reigenborn's motion to dismiss Plaintiff's deliberate indifference and retaliation claims against him in his individual capacity and dismisses these claims with prejudice.

        c.    *Title II ADA*

The Magistrate Judge recommended dismissing Plaintiff's Title II claim against Sheriff Reigenborn in his individual capacity because Title II of the ADA does not provide for individual liability.  (ECF No. 86 at 20 (citing 42 U.S.C. § 12132 (providing disabled individuals redress for discrimination by a "public entity"); *see also* 42 U.S.C. § 12131 (defining public entity); *cf. Butler v. City of Prairie Vill., Kan*., 172 F.3d 736, 744 (10th Cir. 1999) (holding "the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition")).)  Neither Sheriff Reigenborn (ECF No. 90) nor Plaintiff objected to this portion of the Recommendation.

Finding no clear error, the Court adopts this portion of the Recommendation.  Plaintiff's Title II claim against Sheriff Reigenborn in his individual capacity is dismissed with prejudice.

        2.    <u>Detention Specialist DeHerrera</u>

First, the Court addresses the arguments in the Reigenborn/DeHerrera/Overmyer Objections concerning the manner in which the Magistrate Judge addressed qualified

immunity with respect to Detention Specialist DeHerrera.  In a section entitled "Former Sheriff Reigenborn, Deputy Overmyer and Detention Specialist DeHerrera Are Each Entitled to Qualified Immunity on the Claims Not Otherwise Recommended for Dismissal," Detention Specialist DeHerrera argues that the Magistrate Judge "simply refus[ed] to address qualified immunity."  (ECF No. 90 at 4.)  While this statement may be true with respect to other Defendants in this action (namely, Sheriff Reigenborn and Deputy Overmyer), it is not true with respect to Detention Specialist DeHerrera.  The Magistrate Judge addressed his qualified immunity defense in the Recommendation. (ECF No. 86 at 12–16 (addressing Plaintiff's deliberate indifference allegations and clearly established prongs of qualified immunity).)  Further, the Magistrate Judge did not shift the burden of demonstrating qualified immunity to Detention Specialist DeHerrera, and the Court's analysis with respect to clearly established law and Deputy Rabie also applies here. *See supra*, Part IV.A.1.b.

Plaintiff alleges one claim of  deliberate indifference against Detention Specialist DeHerrera in his individual capacity.  Detention Specialist DeHerrera argues that the Magistrate Judge erred in concluding that Plaintiff sufficiently alleged deliberate indifference against him.  (ECF No. 90 at 7–10.)  Detention Specialist DeHerrera challenges the allegation that he "did not respond to [Plaintiff's] cellmate's distress button" because he contends that Plaintiff has no way of knowing whether Detention Specialist DeHerrera chose not to pass notice of Plaintiff's distress call to floor deputies. (*Id.* at 8.)  Rather, Plaintiff relies on statements from Deputy Chavez after the incident that "all the living unit deputies" made an informal policy "not to chase buttons."  (*Id.* at 8 (citing ECF No. 55 ¶ 45).)  Additionally, Detention Specialist DeHerrera argues that

Plaintiff never alleges that he "ever directly perceived him," nor does Plaintiff "provide any plausible allegation as to how [he] (remote as he was outside of [Plaintiff's] closed cell door) knew that [Plaintiff] had fallen (as opposed to pressing the call button for some other reason), or that the fall was serious." (*Id.* at 9.)

The Court finds these objections are without merit, particularly at the motion to dismiss stage of this litigation. In the SAC, Plaintiff plausibly alleges that Detention Specialist DeHerrera ignored his cellmate's emergency distress calls and caused him substantial harm, including that Plaintiff "remained in the floor of his cell, in pain for nearly an hour, and soiled himself because of the pain and inability to move." (¶ 27.) As the Magistrate Judge points out, to allege a deliberate indifference claim, "Plaintiff must allege acts *or omissions* sufficiently harmful to evidence deliberate indifference to serious medical needs." (ECF No. 86 at 13 (emphasis in original).) Detention Specialist DeHerrera allegedly "failed to notify the floor deputies of a call for emergency medical attention." (¶ 26.)

In the Court's view, while Detention Specialist DeHerrera may not have directly observed Plaintiff in his cell, he allegedly was aware that emergency distress calls were coming from Plaintiff's cell and failed to notify floor deputies of the risk of harm to the occupants of the cell, which included Plaintiff. The Court concludes that these allegations satisfy the requirements of deliberate indifference at this stage of the litigation.

Therefore, the Court overrules Detention Specialist DeHerrera's objections and adopts this portion of the Recommendation. Detention Specialist DeHerrera's motion to dismiss is denied, and Plaintiff's claim for deliberate indifference against Detention

Specialist DeHerrera in his individual capacity will proceed.

        3.    <u>Deputy Overmyer</u>

        a.    *Official Capacity Claims*

The Magistrate Judge recommended dismissing Plaintiff's two claims against Deputy Overmyer for deliberate indifference and discrimination under Title II of the ADA in her official capacity because Plaintiff's claims against Sheriff Claps will proceed. (ECF No. 86 at 16 (citing *Stump v. Gates*, 777 F. Supp. 808, 816 n.3 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993) (explaining a § 1983 action need only be brought against municipality or a municipal official in her official capacity); *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) (same as to Title II claims)).) Deputy Overmyer did not object to this recommendation (ECF No. 90), and Plaintiff filed no objections to the Recommendation.

The Court has rejected the Magistrate Judge's recommendation that the claims against Sheriff Claps proceed, dismissed Plaintiff's Title II ADA claim without prejudice, and has concluded that the remaining claims against Adams County will proceed. *See supra*, Part IV.B. Accordingly, while the parties and procedural posture are different, the conclusion remains the same.

Finding no clear error in the Magistrate Judge's analysis, the Court adopts this portion of the Recommendation. The Court grants Deputy Overmyer's motion to dismiss the official capacity claims against her and dismisses Plaintiff's claims for deliberate indifference and discrimination under Title II of the ADA against Deputy Overmyer in her official capacity with prejudice.

b.    *Individual Capacity Claims*

(i)    Deliberate Indifference

Deputy Overmyer objects to two aspects of the Recommendation as they relate to Plaintiff's individual capacity claims against her.  First, she objects to the manner in which the Magistrate Judge addressed the qualified immunity analysis.  (ECF No. 90 at 3–6.)  Although Tenth Circuit precedent requires the *plaintiff* to bear the ultimate burden of persuasion to overcome qualified immunity, the Magistrate Judge stated

> In addition to arguing Plaintiff fails to state a claim against her for deliberate indifference, Deputy Overmyer invokes qualified immunity in the following sentence: "To the extent counts two and four are not dismissed on other grounds, Deputy Overmyer has qualified immunity for both counts for the same reasons set forth in Section II.B., *supra*."  (Doc. No. 35 at 17.)  Below, the Court discusses and rejects Defendant's Section II.B. argument as inadequately presented. *See infra* Section IV(B).  The Court also rejects it here.  Deputy Overmyer has not adequately presented a qualified immunity defense to Plaintiff's second claim, and the Court therefore declines to address it further at this stage.  *See Tillmon v. Cty. of Douglas*, No. 18-cv-00492, 2019 WL 1375678, at *12 (D. Colo. Mar. 27, 2019) (declining to rule on qualified immunity defense where defendants "offer[ed] no arguments and no law" to support a qualified-immunity defense), *aff'd*, 817 F. App'x 586, 589 (10th Cir. 2020) (unpublished) (declining to address qualified immunity on appeal because the argument was not properly preserved, as the "analysis of qualified immunity in [the motion to dismiss] was cursory at best" and "consisted of a single paragraph briefly discussing the law of qualified immunity").  The Court recommends denying Deputy Overmyer's Motion to Dismiss Plaintiff's deliberate indifference claim against her in her personal capacity.

(ECF No. 86 at 17–18.)  Deputy Overmyer argues in her Objections that "[b]y simply refusing to address qualified immunity, the Magistrate's Recommendation impermissibly flips the burden of persuasion on to the defendants in contravention of binding Tenth Circuit precedent."  (ECF No. 90 at 4.)  Additionally, she asserts that "[n]o published

decision of the Tenth Circuit authorizes a lower court to circumvent the qualified immunity burden by simply deeming a multi-page argument from the defendants as inadequate to 'raise' the defense."  (*Id.*)

Although the Court does not entirely agree that the Magistrate Judge *completely* shifted the burden of persuasion to Deputy Overmyer, the Court does agree that it was error not to address Deputy Overmyer's arguments with respect to the clearly established element of qualified immunity—regardless of their length and placement in the motion to dismiss briefing.  Therefore, the Court rejects that portion of the Recommendation analyzing the clearly established element of the qualified immunity analysis and addresses it *de novo* below.

The Court has reviewed Plaintiff's response brief, which responded to Adams County, Sheriff Reigenborn, and Deputy Overmyer's combined motion to dismiss.  (ECF No. 52.)  In his brief, Plaintiff cited the same three cases to respond to the clearly established element of both Sheriff Reigenborn and Deputy Overmyer's qualified immunity defense.  (*Id.* at 23–24.)  Therefore, for the same reasons as the Court stated above with respect to the deliberate indifference and retaliation claims brought against Sheriff Reigenborn in his individual capacity, the Court also finds that Plaintiff has not met his burden to demonstrate that Deputy Overmyer is not entitled to qualified immunity on his deliberate indifference claim.  *See supra*, Part IV.C.1.b.

The Court sustains Deputy Overmyer's objections with respect to qualified immunity on the deliberate indifference claim brought against her in her individual capacity, rejects the Recommendation's findings on this point, grants Deputy Overmyer's motion to dismiss the deliberate indifference claim brought against her in

her individual capacity, and dismisses Plaintiff's claim for deliberate indifference against Deputy Overmyer in her individual capacity with prejudice.

(ii)   Title II ADA

The Magistrate Judge recommended dismissing Plaintiff's Title II claim against Deputy Overmyer in her individual capacity because Title II of the ADA does not provide for individual liability.  (ECF No. 86 at 16 (citing 42 U.S.C. § 12132 (providing disabled individuals redress for discrimination by a "public entity"); *see also* 42 U.S.C. § 12131 (defining public entity); *cf. Butler v. City of Prairie Vill., Kan*., 172 F.3d 736, 744 (10th Cir. 1999) (holding "the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition")).)  Neither Deputy Overmyer (ECF No. 90) nor Plaintiff objected to this portion of the Recommendation.

Finding no clear error, the Court adopts this portion of the Recommendation. Plaintiff's Title II claim against Deputy Overmyer in her individual capacity is dismissed with prejudice.

**V. CONCLUSION**

For the reasons set forth above, the Court ORDERS as follows:

1.  The Recommendation (ECF No. 86) is ADOPTED, ADOPTED AS MODIFIED, AND REJECTED, as set forth above;

2.  The Rabie/Claps Objections (ECF No. 88) are OVERRULED as set forth above;

3.  Adams County's Objections (ECF No. 89) are OVERRULED IN PART AND SUSTAINED IN PART, as set forth above;

4.  The Reigenborn/DeHerrera/Overmyer Objections (ECF No. 90) are OVERRULED IN PART AND SUSTAINED IN PART, as set forth above;

5.  Defendants Adams County's, Sheriff Reigenborn's, and Deputy Overmyer's Motion to Dismiss (ECF No. 35) is GRANTED IN PART and DENIED IN PART, as set forth above;

6.  Defendant Dennis Rabie's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 78) is DENIED;

7.  Defendant Daniel DeHerrera's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 80) is DENIED;

8.  The Court rules on Plaintiff's claims in his Second Amended Complaint (ECF No. 55) as follows:

    a.  Plaintiff's deliberate indifference claim against Deputy Rabie in his individual capacity will proceed;

    b.  All of Plaintiff's claims against Sheriff Claps in his official capacity are DISMISSED WITH PREJUDICE;

    c.  Plaintiff's Title II claim against Adams County is DISMISSED WITHOUT PREJUDICE;

    d.  Plaintiff's § 1983 claims against Adams County for excessive force, deliberate indifference, and retaliation will proceed;

    e.  Plaintiff's excessive force claim against Sheriff Reigenborn in his individual capacity is DISMISSED WITHOUT PREJUDICE;

    f.  Plaintiff's deliberate indifference, retaliation, and Title II claims against Sheriff Reigenborn in his individual capacity are DISMISSED WITH PREJUDICE;

    g.  Plaintiff's deliberate indifference claim against Detention Specialist

DeHerrera in his individual capacity will proceed;

    h.  All of Plaintiff's claims against Deputy Overmyer in her official and individual capacities are DISMISSED WITH PREJUDICE;

9.  Plaintiff is GRANTED leave to file a **final** Third Amended Complaint by no later than **April 22, 2024** that cures the pleading deficiencies referenced above.  The Third Amended Complaint will be limited SOLELY to the claims referenced in Part V.8. (a), (c), (d), (e), and (g) immediately above; and

10.  The Clerk is DIRECTED to terminate Sheriff Claps and Deputy Overmyer as Defendants on the docket, and the parties are DIRECTED to remove all reference to them in the caption of all future filings.

Dated this 18th day of March, 2024.

BY THE COURT:

William J. Martínez
Senior United States District Judge